ROBERT THEOBOLD, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. LEON ANGELOS AND DELAWARE TOWNSHIP, NOW KNOWN AS CHERRY HILL TOWNSHIP, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued May 6, 1963—Decided June 3, 1963.

296

Mr. *Samuel P. Orlando* argued the cause for defendants-appellants and cross-respondents.

Mr. *Frank E. Villori* argued the cause for plaintiff-respondent and cross-appellant (*Mr. John H. Reiners, Jr.,* attorney).

The opinion of the court was delivered by

FRANCIS, J.   This is an automobile negligence case.

Plaintiff Robert Theobold is the owner of certain premises located on Berlin Road, Delaware Township, New Jersey. At about 2:00 A. M. on September 22, 1960 James Anderson was driving his car in an easterly direction on Berlin Road when for some reason, it went out of control, spun around and came to rest partly on Theobold's property and partly on the street. Theobold and his son-in-law, Kenneth Golden, were awakened, dressed themselves, and went outside to investigate the happening. The Delaware Township police were telephoned, and shortly thereafter Officer Leon Angelos appeared on the scene in a police car which he parked near the Anderson vehicle. The exact position occupied by Angelos' car was the subject of dispute in the litigation which followed. It was also alleged later that its dome light was not functioning at the time. Theobold was standing between the Anderson and police cars; Golden was nearby. While the four men were engaged in conversation, Francis X. Conaty, who had been driving along Berlin Road, crashed into the rear of the police car, driving it into Anderson's car and pinning Theobold's legs between the two vehicles. Theobold was severely injured. Golden, Angelos and Anderson also suffered some minor injuries.

Thereafter, Theobold and Golden sought damages from Conaty on account of their injuries and losses. Angelos instituted a similar suit against Conaty. Conaty brought a third-party action seeking contribution from Anderson, Angelos and Delaware Township as joint tort-feasors in the event he should be held liable to Theobold and Golden. Angelos and the township then counterclaimed against Conaty for contribution should they be found liable to Theobold and Golden. Finally, Theobold and Golden amended their original complaint and added Anderson, Angelos and the township as defendants in their action.

Prior to trial, Theobold settled his claim against Conaty and Anderson for $90,000, the former paying $88,500 and the latter $1,500. Golden also made an adjustment with these

defendants, Conaty paying him $1,500 and Anderson $500. A stipulation of dismissal as to Conaty and Anderson was then entered. The case proceeded to trial as to Angelos and the township and resulted in a jury verdict against them of $65,-000 for Theobold and of $1,000 for Golden. At plaintiffs' request, the trial court submitted separate written interrogatories to the jury calling for a specific finding whether either Anderson or Conaty was guilty of negligence and if so, whether such negligence was a "concurring and proximate cause of" plaintiffs' injuries. This was done, although as the result of the settlement, the case was not being tried formally against Anderson or Conaty. No issue as to the propriety of such interrogatories is presented here, and decision thereon is expressly reserved. In returning its verdict, the jury answered the questions with a negative finding as to Anderson's negligence, and an affirmative one as to Conaty.

Upon receipt of the verdicts of $65,000 for Theobold and $1,000 for Golden, the trial court undertook to mold them in accordance with his conception of the requirements of section 3 of the Joint Tortfeasors Contribution Law, *N. J. S.* 2A:53A–1 *et seq.* The section provides:

"Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his *pro rata* share; * * *."

In molding the verdict, he accepted the jury's negative answer to the interrogatory as to Anderson's negligence, and eliminated him as a joint tort-feasor for purposes of adjudging the basis for contribution between Conaty on the one hand and Angelos and the township on the other. The latter two defendants had to be considered as a single tort-feasor. *N. J. S.* 2A:53A–1. Thus, with two tort-feasors involved, he divided Theobold's verdict of $65,000 into two equal parts of $32,500.

One part, in that amount, he treated as satisfied by the Conaty settlement. Then the $1,500 settlement payment made by Anderson was deducted from the remaining $32,500, and judgment for the balance of $31,000 was entered against Angelos and the township.

The same course was followed with respect to Golden's verdict of $1,000. It, too, was divided in half indicating a liability for purposes of application of the statute, of $500 for Conaty and $500 for the unit, Angelos and the township. Conaty's liability was considered satisfied because of his pretrial settlement of $1,500. Then Anderson's payment of $500 was deducted from the remaining $500 chargeable against Angelos and the township, and Golden's verdict of $1,000 was adjudged satisfied.

Thereafter, Angelos and the township moved for an order directing the clerk of the court to enter a satisfaction of the judgment of $31,000 outstanding against them. The application was based upon the ground that the plaintiff Theobold was entitled to be compensated once for his injuries, and since he received from Conaty and Anderson $90,000, or $25,000 in excess of what the jury had assessed by its verdict as reasonable compensation for his injuries and losses, i. e., $65,000, the judgment record should be marked satisfied. Obviously, if the motion prevailed, Angelos and the township would be relieved of any financial obligation toward Theobold.

Plaintiff Theobold countered with a motion for a new trial as to damages only, or in the alternative for an order amending the record to reflect as an outstanding judgment the full verdict of $65,000. The latter portion of the motion was predicated upon the contention that, as the result of the trial court's charge, the jury had mistakenly understood it was to decide upon the sum representing just compensation for the plaintiff, then divide it among the number of tort-feasors it found responsible, and return a verdict accordingly against Angelos and the township (the only remaining defendants in the case) for their *pro rata* share, if it found them liable to the plaintiff.

Upon denial of all motions, Angelos and the Township appealed; Theobold cross-appealed. We certified the matter on our own motion before it was argued in the Appellate Division.

The appeals involve a number of problems respecting the administration of the Joint Tortfeasors Contribution Law. We have concluded, however, that they should not be decided at this time, because we are convinced justice requires a new trial of the issue of damages only. Examination of the charge of the court with respect to the settlements made by plaintiffs with Anderson and Conaty, and the effect they would have on the determination and assessment of damages by the jury, indicates such a grave probability of mistaken understanding by the jurors as to their proper function in deciding upon the amount of the verdict, if they found liability on the part of the remaining defendants, Angelos and the township, as to necessitate reconsideration of the problem by another and more fully instructed jury.

Under the common law there was no right of contribution among joint tort-feasors. Release of one operated as a release of all such wrongdoers. Payment of a judgment by one brought about the same result as to all others. If, however, an injured person gave a covenant not to sue to one joint tort-feasor in return for a sum accepted as part compensation for the damages suffered, the other wrongdoers were not discharged. Suit might be brought against them but the sum received in partial satisfaction was provable at the trial in mitigation of the recovery. *Brandstein v. Ironbound Transportation Co.*, 112 *N. J. L.* 585 (*E. & A.* 1934). In such cases the trial courts charged the jury that they were to decide first, if the defendant was guilty of the wrongdoing which caused or contributed to causing the plaintiff's injuries or damage. If that issue was decided affirmatively, then they were to decide upon the full sum which represented fair and reasonable compensation for the plaintiff's proven injuries and losses. In the deliberations as to that amount, they were instructed to put aside and out of their minds the

amount already received by the plaintiff for the covenant not to sue. Then they were told that upon reaching a decision as to the sum representing full compensation, at that point, and not before, they should consider plaintiff's settlement and its effect on their verdict. If the amount of the settlement was equal to that found by the jury to constitute just compensation for the injuries and losses, they were instructed to return a verdict for the defendant. But if the settlement was for less than their monetary evaluation of just compensation, a verdict was to be returned for the difference. *Id.*, at *pp.* 592, 593. The explanation given to the jury was that under the law the victim of a wrong was entitled to be paid such sum as represented full and fair compensation for his damage, but that he was entitled to be paid such compensation just once.

Adoption of the Joint Tortfeasors Law in 1952 (*L.* 1952, *c.* 335) did not change the fundamental doctrine that an injured person is entitled to receive full and fair compensation but once, regardless of the number of wrongdoers who participated in inflicting the damage. Application of the statute, however, in certain situations where a plaintiff has made a partial settlement with less than all of the alleged tort-feasors without trial of his case, may result in actual receipt of a lesser sum than that fixed by a jury as representing full compensation. See *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N. J.* 67, 93–94 (1954); 25 *N. J.* 17, 34–36 (1957). For example, if plaintiff settles with one of two tort-feasors for $2,000 and a jury later returns a verdict of $10,000 against the other, the courts will treat the non-settling tort-feasor's liability as $5,000, and the $2,000 payment as discharging the other half of the verdict. Thus, plaintiff will receive only $7,000 in full satisfaction of a claim, the reasonable worth of which was adjudicated at $10,000.

The other side of the coin, as exhibited by this case, has not yet received judicial consideration. What should be the result when one joint tort-feasor pays the plaintiff in advance of trial a greater sum in settlement than the jury later finds

to represent full and fair compensation for the injuries and losses? Here, Theobold received $90,000 in settlement from Conaty and Anderson, and the verdict of $65,000 returned against Angelos and the township (assuming the jury fully understood its function in valuing the claim) would have to be considered as fully compensatory. Should the defendants who made no settlement payment but who were adjudged tort-feasors by the jury escape any contribution at all on the theory that plaintiff has been fully compensated by the $90,000 already received? Should the plaintiff be permitted to retain the advantage of his bargain with Conaty and Anderson and, for purposes of the statute, be charged only with one-half of the $65,000 verdict plus the $1,500 received from Anderson, or $34,000, leaving the defendants who went to trial responsible for the remaining $31,000? Or, finally, since plaintiff sued Anderson as a joint tort-feasor and accepted $1,500 in settlement from him, should he be estopped from denying Anderson's status as a joint tort-feasor under the statute? If there is no estoppel, should the $1,500 received from Anderson be deducted in full or excluded entirely? If an estoppel does arise, then for application of the statute, should the $65,000 verdict be treated as divisible in three equal parts, with Anderson's *pro rata* share of $21,666.66 chargeable to the plaintiff in the computation of the extent of contribution liability of Angelos and the township? *Cf. Hoeller v. Coleman,* 73 *N. J. Super.* 502 (*App. Div.* 1962). As has been indicated, we do not reach these problems because of our opinion that the matter must be retried as to the *quantum* of damages.

For the present, the factor we wish to emphasize is the imperative need for adequate education of juries when settlements such as we face here are effectuated before or at trial in multiple tort-feasor cases. If such education is not accomplished, there is an ever present danger that the verdict will not represent application of the true measure of recovery.

Under the present practice, where multiple tort-feasors are or may be jointly responsible for an individual's injuries

and losses, and one or more of them effect a settlement in exchange for a covenant not to sue, the fact of the settlement, but not the amount paid, is generally brought to the attention of the jury at the trial. In most cases, from the plaintiff's standpoint, this is not only wise psychologically, but fair as well. When the jury has such knowledge, speculation is avoided as to the reason for the absence from the proceedings of an additional potentially liable person. But it then becomes important to make certain the jurors appreciate the significance of the settlement in connection with their duty to assess damages, if they find the remaining defendant was concurrently responsible to the plaintiff with the tort-feasors who have removed themselves from the case by their settlements. Accordingly, they must be instructed in crystal clear fashion as to the course they are to follow in reaching their verdict.

First, the jurors must decide on the evidence whether the defendant on trial was guilty of negligence which was solely or partly responsible for the incident which produced the plaintiff's injuries and pecuniary losses. After reaching an affirmative conclusion on that subject, they should then pass to a determination of the amount of compensation to be awarded. Here they have to realize that their duty is to give to the plaintiff the total sum which represents reasonable compensation for his injuries and losses. That means such sum as would be reasonable compensation for his bodily injuries, for the pain and suffering resulting therefrom, past, present and future, for the effect of those injuries upon his health according to their degree and probable duration, and for any permanent disability which in reasonable probability has resulted or will result. To that sum should be added all expense, past and future, reasonably necessary or incidental to plaintiff's efforts to cure or alleviate his injuries or resulting disability, and all other pecuniary losses suffered or to be suffered in the future as the result of his inability to engage in his usual occupation. The computation must be made without regard to the number of defendants remaining in the

case, or the number of defendants originally in the case, without regard to the total number of persons involved in the incident which caused the damages, including those who have made settlements with plaintiff, and without any deduction based upon what the jurors think plaintiff may or should have received in those settlements. If the defendant remaining in the case is found to be solely or partly responsible for the incident, then, in assessing the damages, the jury should treat the matter as if no one other than defendant were ever involved in the accident and as if their only problem were to decide on the monetary sum which would fully and fairly compensate the plaintiff for his injuries and damages. And advice should be given that under no circumstances are they to attempt to apportion that amount on the basis of the number of apparently culpable persons involved, and endeavor to return the fraction thereof deemed applicable to the defendant before them. An understanding is essential that when the sum representing full compensation is returned, it will be apportioned as the law dictates among the defendant or defendants found responsible by the jury and the other persons who have made settlements with the plaintiff. A properly compensatory verdict can be expected once the trial court, by its instructions, engenders in the minds of the jurors an appreciation that injustice and inadequate recovery will fall upon the plaintiff if, on the basis of some effort at allocation among the remaining defendants and the settlers, they lower the total sum he is entitled to receive as measured by the elements of damage described above.

In charging the jury in the present case, almost at the outset the court referred to the settlement by Conaty and Anderson in general but ambiguous terms. He said:

"This case originally had two other defendants. You have heard, of course, throughout the case that both of these defendants, namely, Francis Conaty and James Anderson have already settled their cases with both of these plaintiffs. The Court, of course, will not tell you the amount of the settlement that was made because you are to figure this case, if you feel that these plaintiffs are entitled to a

judgment, on what each of the plaintiffs' verdicts should be, assuming of course that you find that they are entitled to a verdict against the two present defendants, namely Leon Angelos and Cherry Hill Township."

Then followed a discussion of the happening of the accident and the various claims of fault, after which the court continued:

"The contention of the plaintiffs, as the Court understands, is that all three were negligent, namely, Mr. Anderson, the police car operated by Mr. Angelos, acting as the servant or agent of Cherry Hill Township, and, of course, Cherry Hill Township * * *.

As I say, the contention of both of the plaintiffs is that Mr. Conaty, Mr. Anderson, Mr. Angelos and the Township were all negligent, and that it was the negligence of the whole group that was the proximate cause of the injuries of which these two plaintiffs complain.

The basis of the contention concerning the plaintiffs is that the police car was, in addition to the disagreement concerning certain lights, improperly parked under the circumstances which existed at that particular time and place; and, of course, because of their allegation that it was the negligence of all the defendants, who were previously in the case, it was the proximate cause of their injuries. They are, of course, demanding damages for those injuries. Now, as I say, at the present time in the case there are only the two defendants, Leon Angelos and Cherry Hill Township, and likewise only two plaintiffs, Mr. Golden and Mr. Theobold."

The charge proceeded with a further outline of the claims of Angelos and the township with respect to the cause of the accident and their freedom from negligence. Burden of proof, negligence and proximate cause and weight of evidence were defined as a prelude to discussion of damages. After the conventional explanation of the rules for measuring damages and of their duty to decide the case without sympathy, passion or prejudice, this statement was made:

"The Court, in order to simplify these matters for you, has drawn up special interrogatories to be submitted to you. Under the rules of the court, that is, of course, the right of the court. The only purpose of these interrogatories is to help the jury in arriving at a final verdict in the matter. I will give these interrogatories to you, and, of course, obviously, interrogatories are questions to be answered by the jury. * * *"

The interrogatories referred to included those mentioned above, making inquiry as to the negligence of Conaty and Anderson. No clear explanation was given of their function in the case or the effect, if any, of the answers on their damage verdict. The court said:

"I will not go into detail as far as the interrogatories are concerned. I ask you to give serious consideration to them; read them, consider all of the testimony that has been presented in the case on behalf of both the plaintiffs and defendants; consider the law as explained to you by the Court. And after you have given due consideration to all of those factors, answer the questions set forth in the special interrogatories that have been submitted to you by the Court. The answers to these questions will permit the Court to accept from you a verdict provided that any ten of you agree upon a verdict. When you read the interrogatories, I think that you will clearly understand them. If, however, you do not, then you have a perfect right to ask the Court for additional instructions, not only on the interrogatories, but anything as far as the Court's charge itself is concerned."

The charge ended at that point and the court asked for exceptions, which were presented out of the presence of the jury. Plaintiffs' counsel objected saying:

"I take exception, your Honor, to the failure of the Court to charge, in view of the fact that this case involves the application of the joint tortfeasors act, that the verdict should be as if the other potential joint tortfeasors were still parties to the action; and some reference by the Court to the fact that whatever the verdict is it will be molded in accordance with the applicable law with which they are not concerned. That is my only exception.

THE COURT: I will rule against this exception. The objection to the Court's ruling may be entered on the record on behalf of the plaintiffs."

██ We have not recited the entire charge of the court. The pertinent portions referring to the settlement and the interrogatories have been set out in order to indicate the basis of our agreement with counsel for plaintiffs that a strong possibility of misunderstanding existed in the minds of the jurors as to the effect of the settlements on the *quantum* of their verdicts. At no point in its charge did the trial court clearly

inform the jurors that their verdict should represent full and fair compensation for all the plaintiffs' damages arising out of the accident. Rather the jurors might well have understood that their duty was to award damages representing the share to be paid by Angelos and the township who the jurors were told were the only defendants remaining in the case. Appellate courts have had little occasion previously to be specific as to the scope of the charge in dealing with settlements which bring the tort-feasors contribution statute into play. We recognize also that experience in application of the statute at the trial level in cases like the present one has been relatively limited. Accordingly, we have undertaken to suggest herein the type of explanation to be given as to the operation of the statute in such cases in order to avoid the possibility of attempts by juries at apportionment of damages.

Under all the circumstances, we are satisfied that the interests of justice require a new trial and that it be limited to the issue of damages. If after retrial and entry of judgment, issues arise as to the propriety of the allocation of the verdict among the various alleged tort-feasors, on the filing of a notice of appeal to the Appellate Division, an application may be made immediately to this court for certification.

Reversed and remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.