148 N.J. Super. 202 (1977)
372 A.2d 378
GEORGE POLYARD, AS ADMINISTRATOR AD PROSEQUENDUM FOR THE HEIRS AT LAW OF DOROTHY FERREIRA, DECEASED, AND GENERAL ADMINISTRATOR OF THE ESTATE OF DOROTHY FERREIRA, DECEASED AND HERBERT FERREIRA, PLAINTIFFS,
v.
DAVID TERRY, JOYCE F. HEIL AND STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 28, 1977.
*204 Mr. Joseph L. Kramer, for plaintiffs.
Mr. Thomas F. Marshall, for defendant State of New Jersey (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PETRELLA, J.S.C.
This proceeding arises in part as a result of a jury verdict for plaintiffs in favor of the administrator ad prosequendum of the estate of the deceased, Dorothy Ferreira, under the Wrongful Death Act (N.J.S.A. 2A: 31-1), and the Survival Act (N.J.S.A. 2A:15-3), and in favor of plaintiff Herbert Ferreira in his personal injury action against defendants Terry and the State of New Jersey. The State also has moved for a new trial on various grounds. This motion was denied and only a limited aspect thereof is discussed in Point III, infra.
Plaintiffs and the State dispute application of principles of contribution law to joint tortfeasors as they apply under the New Jersey Tort Claims Act (N.J.S.A. 59:1-1 et seq.).
Plaintiffs settled with defendant Terry prior to trial for a payment of $15,000 to the administrator (without allocation between the death and survival actions), and for *205 $10,400 to Herbert Ferreira[1]. Plaintiffs settled during trial with defendant Heil (who had been driving immediately behind the Ferreira vehicle) for $2,500 and a covenant not to sue (without allocation between the causes of action) in full satisfaction of all claims. A pretrial order had been entered confirming the nonliability of the settling defendant Terry for any further contribution. Compare Pierringer v. Hoger, 21 Wis.2d 182, 124 N.W.2d 106 (Sup. Ct. 1963). The negligence issues as to the State and the settling tortfeasors were submitted to the jury which found defendant Terry and the State negligent[2]. Heil was found not to be a joint tortfeasor.
The defense of plaintiffs' negligence was dismissed at the end of the case by consent as to plaintiff Ferreira and over objection as to decedent. (See Part III). Upon request of the deputy attorney general representing the State, the jury was asked to find not only which defendants, if any, were negligent, but also percentages of negligence attributable to such defendants as appears to be required on the face of N.J.S.A. 59:9-4(b) (discussed infra). The jury *206 attributed 70% of the negligence to Terry and 30% to the State.
The jury awarded plaintiff administrator $135,000 in the death action, and $8,949 in the survival action[3]. Plaintiff Herbert Ferreira was awarded $15,000.

I
The State here seeks to limit its liability to 30% of the verdict, or alternatively, to no more than a pro rata share of 50% of the verdict, less credits. N.J.S.A. 59:9-3 states, among other things, that "Notwithstanding any other law," where a public entity is a joint tortfeasor the public entity can be required to contribute to a joint tortfeasor only to the extent of the recovery provided for under this act. This limits claimants from collecting from the State to those areas where recovery is allowed under the act (and subject to the limitations in N.J.S.A. 59:9-2). This restrictive philosophy is mirrored in the 1972 comments[4] to N.J.S.A. 59:9-3(a). Here the converse situation exists and the State seeks credits based on the settlements.
Any amount received by an injured plaintiff on account of a settlement which was "paid by an alleged tortfeasor shall be reduced pro tanto from the injured party's judgment against any other tortfeasor." N.J.S.A. 59:9-3(b).
This language changes part of the rule of Theobold v. Angelos, 40 N.J. 295 (1963) (and see the 1965 decision reported at 44 N.J. 228), as it applies to cases involving public entities as defendants. Indeed, the 1972 comment to *207 N.J.S.A. 59:9-3 expressly states that section's purpose is just that as to subparagraph (b), which
* * * mandates that any settlement by a joint tortfeasor in a suit involving a public entity or public employee shall be deducted pro tanto from any judgment against another joint tortfeasor. This provision changes the existing law which provides that when a joint tort-feasor settles with a claimant there will be a pro rata reduction of the judgment against the remaining tortfeasors. In other words, the plaintiff does not now [before the act] recover the full amount of his judgment if he settles with a joint tortfeasor below his pro rata share of the judgment (to the extent of the difference). [Brackets supplied]
Such statements or comments can be considered in determining legislative history. See Raybestos-Manhattan, Inc. v. Glaser, 144 N.J. Super. 152, 168-171 (Ch. Div. 1976), and Caldwell v. Rochelle Park Tp., 135 N.J. Super. 66, 74 (Law Div. 1975).
The reference to plaintiff not now receiving the full judgment (see inserted bracketed phrase), refers to the state of the law before the act, based upon Theobold v. Angelos, supra (40 N.J. 295). In other words, if a plaintiff settled with a joint tortfeasor below his pro rata share, plaintiff could not recover the difference between that amount and the pro rata share, and does not receive his full judgment.
That comment further states:
The above provisions would rectify this inequity and permit a plaintiff to recover from any non-settling tortfeasor the difference between the total amount of his judgment and the amount of any settlement he may have reached. In addition to more fairly and fully compensating an injured plaintiff, this provision will undoubtedly encourage settlements by all parties.
Thus, this section of the law contains a specific intent to clearly change the existing law in part as to public entities, under the New Jersey Joint Tortfeasors Contribution Law (N.J.S.A. 2A:53A-1) and the Theobold cases. The comment reference to "nonsettling tortfeasor" reinforces the proposition that neither plaintiff nor any *208 nonsettling joint tortfeasor can recover in this action any further contribution from any settling tortfeasor. Here plaintiffs can recover the full amount of the jury verdict from the State to the extent the act allows recovery against a public entity, less pro tanto reductions for the two settlements. Plaintiffs would then be fully compensated (subject to possible adjustments  see N.J.S.A. 59:9-2). In the usual case this would further the intended policy under the act of encouraging settlements.
The State argues that the omission of the language contained in N.J.S.A. 2A:15-5.3, the general comparative negligence statute, from the Tort Claims Act evinces an intent that plaintiffs cannot recover their full verdicts (less settlements) against the public entity. The Tort Claims Act, however, contains separate and distinct authority for contribution in suits involving a public entity. N.J.S.A. 59: 9-3. An examination of the contribution (N.J.S.A. 59: 9-3) and comparative negligence (N.J.S.A. 59:9-4) sections of the Tort Claims Act, and legislative history indicates that the Tort Claims Act must be read in pari materia with the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 et seq., to the extent not inconsistent. See N.J.S.A. 59:1-2 and 59:12-2.
The contribution provisions in the New Jersey Tort Claims Act are not irreconcilable with N.J.S.A. 2A:53A-1, which is superseded only to the extent inconsistent with N.J.S.A. 59:9-3. The 1972 comments to that section recognize this (while misciting the precise statutory reference in, for example, the first paragraph thereof); and see Cancel v. Watson, 131 N.J. Super. 320 (Law Div. 1974), and Markey v. Skog, 129 N.J. Super. 192 (Law Div. 1974). This section in the New Jersey Tort Claims Act, with the exception noted, is governed by cases such as Theobold v. Angelos, interpreting, where consistent, the Joint Tortfeasors Contribution Law. It is unnecessary for the Tort Claims Act to state expressly that N.J.S.A. 2A:53A-1 and appropriate case law applies.
*209 The State argued alternatively that since it was found only 30% negligent its liability, even where a plaintiff is not negligent, should not exceed that percentage. The court is of the opinion that findings of a percentage of negligence between joint tortfeasors is unnecessary and has no application between joint tortfeasors where plaintiff is not negligent. Where a plaintiff is not guilty of any "contributory" negligence the doctrine of comparative negligence is not involved. See Issen v. Lincenberg, 293 So.2d 777, 778 (Fla. App. 1974). The apparent requirement for such findings in N.J.S.A. 59:9-4(b) (modelled after N.J.S.A. 2A:15-5.2(b)[5] is superfluous in such a situation. Subparagraph (b) of the comparative negligence provisions of the Tort Claims Act is irrelevant where either plaintiff is not negligent or no defendant is found negligent (except where an appellate court could actually enter a contrary judgment). Section 59:9-4 also states that contributory negligence is no bar if the plaintiff's negligence is not greater than the defendant's  "but any damages sustained shall be diminished by the percentage of negligence attributable to the person recovering." (Emphasis supplied). Thus, a verdict is reduced only by the amount, if any, of plaintiff's negligence.

II
There remains the problem of allocation of the settlement amounts. It is possible to allocate the $15,000 paid to the administrator by joint tortfeasor Terry either pro rata[6] based on a percentage allocation of the award in the *210 two types of action, or by an equal division of $7,500 in each action. Likewise, the $2,500 settlement sum from nontortfeasor Heil can be divided on a percentage allocation[7] or on a one-third each basis.
Pro rata appears more equitable here because of the types of action and the necessity to appoint a guardian ad litem in connection with the distribution of a recovery made under the wrongful death act. See N.J.S.A. 2A:31-4; Jurman v. Samuel Braen, Inc., 87 N.J. Super. 301, 312 (App. Div. 1965), and R. 4:26-2(b).
Based on a pro rata determination for contribution credit purposes (as outlined in footnotes 6 and 7) the distribution of amounts payable, taking the settlements into account, can be calculated in the following manner:

 Death Action Survival Action Pltf. Ferreira's
 P.I. Action
 $ 135,000.00 $ 8,949.00 $15,000.00
Less Terry
settlement -14,067.00 -933.00 -10,400.00
 ____________ __________ __________
 $ 120,933.00 $ 8,016.00 $ 4,600.00
Less Heil
settlement - 2,123.32 -140.75 - 235.93
 ____________ __________ __________
 $ 118,809.68 $ 7,875.25 $ 4,364.07

The above tabulations reflect the amounts awarded for the respective actions and result in plaintiffs being entitled to collect from the State $131,049 of the $158,949 verdict, *211 with interest from the date of the jury verdict of November 30, 1976, plus costs. No prejudgment interest is allowable[8] in view of N.J.S.A. 59:9-2(a). See R. 4:42-11(b).
The judgments are less credits, if any (other than life insurance) under N.J.S.A. 59:9-2(e). Such amounts should have been obtained in pretrial discovery and the parties will disclose to the court any amounts so paid or collectible. Subject to such adjustments and to the distribution proceedings in the wrongful death action, as well as to mathematical verification of the computations, plaintiffs' attorney will submit an appropriate order allocating and apportioning the jury awards in accordance herewith.

III
On its motion for a new trial the State renewed its application made at the close of plaintiffs' case as to damages to eliminate post-trauma, pain and suffering as an element in plaintiff Ferreira's cause of action, and pre-death pain and suffering in the survival action by virtue of the $1,000 limitation in N.J.S.A. 59:9-2(d). No pretrial motion was made as to this issue, and because of the applicability of the no-fault provisions of the New Jersey Automobile Reparation Reform Act, no medical or hospital bills had been introduced into evidence. See N.J.S.A. 39:6A-12. However, the State's attorney moved to strike pain and suffering as a damage element as to plaintiff Ferreira, based on reports attached to answers to interrogatories of two of the plaintiff's doctors showing their bills as of October 1974 totalling only $975. This was exclusive of any hospital bills, any subsequent bills, or potential plastic surgery which was testified to by one doctor. Plaintiff's attorney represented that his medical bills were in an aggregate amount of approximately $1,035, or perhaps more. There were no proofs of bills for decedent. The court declined to *212 have an evidentiary hearing out of the presence of the jury at that posture of the case since it holds as a matter of law that the limitation is inapplicable to a death claim, and that the objection was untimely because, when made, the proofs had all been presented to the jury. This is akin to waiver of the objection. Furthermore, as to plaintiff Ferreira, it appears that future plastic surgery (necessary and reasonable based on testimony of reasonable medical probabilities) would readily raise even the $975 figures above $1,000. Future expenditures may be considered in an appropriate case. See Reale v. Wayne Tp., 132 N.J. Super. 100, 116 (Law Div. 1975). The State on its motion for new trial now argues for the first time that the jury should have been allowed, in the alternative, to consider the reasonableness of the medical bills. However, since plaintiffs' case was tried with N.J.S.A. 39:6A-12 precluding admissibility of the medical bills, the jury was not told the amounts of any medical bills. There was no objection to the court's charge on that issue. Nor was any request made to submit that issue to the jury after defendant Heil settled following rulings on motions to dismiss when plaintiffs rested their case. Such an objection now is untimely and does not require the court to consider the practical problems created if such an objection or request to present the amounts of bills had been made following the settlement of defendant Heil.
The court reaffirms its prior ruling denying the relief sought by the State as to the survival action because the limitation on recovery for pain and suffering relating to an "injury" in the statute is held to be inapplicable where death resulted from the negligence. The 1972 Comments indicate that the $1,000 limitation contained in N.J.S.A. 59:9-2(d) was included to prevent intrusions upon the public treasury where the resultant injury is not "substantial."
It flies in the face of logic to deny recovery for pain and suffering where the negligence of defendant caused *213 death a few hours later, the injuries inflicted being so irreparable that medical treatment was not, or could not, amount to more than $1,000. To accept the State's position is to predicate recovery upon the effectiveness of the negligence in relation to the time in which it takes for death to occur. The legislative intent clearly would not apply to this most substantial injury. Our courts have held that the $1,000 limitation is not a total bar to recovery. It appears to preclude recovery on that aspect of damages in a nondeath case. There is an obvious difficulty in isolating and attempting to disregard pain and suffering. Peterson v. Edison Tp. Bd. of Ed., 137 N.J. Super. 566 (App. Div. 1975).
A further problem with the State's motion is lack of timeliness. When the motion was originally made there was a nonsettling defendant still in the case and the testimony as to decedent's pain and suffering, although not extensive, had been admissible as to such defendant. The jury had heard such testimony long before the State's motion. A limiting charge would have been technically possible, but under the circumstances the court finds it unnecessary to consider the practicalities of such an approach because of the death.
In the court's view the better approach requires the State to move at any time before the opening statements at trial to strike any claim in this regard[9]. The State's motion not being made until the testimony was already completed is too late. See Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229 (1973); Rasmussen v. Nielsen, 142 N.J. Eq. 657 (E. & A. 1948).
*214 The State also moved for a new trial because the court granted plaintiffs' motion to strike the defense of plaintiff's negligence against decedent over objection. The State opened to the jury, raising a question of negligence by decedent passenger as to her injuries based on an alleged failure to wear seat belts.[10] Upon considering that determination for the purpose of the new trial motion, the court iterates its prior ruling. Such a defense has not been clearly established in the law of this State, despite dictum in some New Jersey opinions. Contrary decisions from other jurisdictions are not persuasive here. This case is inappropriate to declare such a rule as to decedent's claim.
In Barry v. Coca Cola Co., 99 N.J. Super. 270, 273 (Law Div. 1967), the court held that there was no duty to wear seat belts. Therefore, a defense of contributory negligence was not sufficient to bar recovery. The court had added that there might be circumstances where the failure to wear seat belts may be shown by evidence to have substantially contributed to the injury occurring as the result of an accident, justifying an apportionment of damages Id. at 274-275. The court analyzed Restatement, Torts 2d, § 465, comment (c) which in effect approved of the reducing of plaintiff's recovery by the plaintiff's negligence, and quoted the observation in Prosser, Torts (3 ed. 1964), § 61 at 434:
Cases will be infrequent, however, in which the extent of aggravation can be determined with any reasonable degree of certainty, and the court may properly refuse to divide the damages upon the basis of mere speculation.
Even though Prosser appears to agree with courts in some jurisdictions which allow apportionment where a plaintiff *215 was not negligent in bringing about the accident but somehow may have aggravated ensuing damages, he recognizes the practical problems involved. This court would not apply that doctrine to passiveness of a plaintiff or inaction in putting on seat belts, absent controlling New Jersey appellate authority mandating such a rule. It would certainly have been mere speculation and conjecture to attempt division of damages for failure to wear seat belts in this case where death occurred and even defendant's medical witness did not attempt an apportionment. Would the jury be asked for this purpose to consider damages as if plaintiff had not died? This question answers itself. Indeed, such speculation would only have increased consideration of pain and suffering of the decedent which was very limited in the survival action. Furthermore, the medical examiner's testimony for the State on the nonwearing of seat belts was inconsistent and somewhat speculative so that the jury could not be allowed to speculate by considering it. On cross-examination there was a concession that even with seat belts on she might have died from other injuries. It was not until redirect examination that he gave an unobjected-to opinion, despite his earlier testimony, that he believed she would not have died if seat belts had been worn.
It is in rare situations where courts have allowed contributory negligence to be used as a defense against a passenger. See, e.g., Ambrose v. Cyphers, 29 N.J. 138, 150-151 (1959); Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 176 (1955); Kaufman v. Pennsylvania R.R. Co., 2 N.J. 318, 324 (1949); and Mockler v. Russman, 102 N.J. Super. 582 (App. Div. 1968). The court refuses to divide the damages or allow the jury to speculate on such a question in this case.
The court concludes that under the present state of the law the failure of a passenger to wear seat belts is not such negligence of a plaintiff (formerly contributory negligence) as a matter of law in a situation where the plaintiff is killed *216 in the accident. Cf. Devaney v. Sarno, 125 N.J. Super. 414 (App. Div. 1973), aff'd o.b., 65 N.J. 235 (1974).
Defendant State argues for the first time in its reply brief to plaintiff's answering brief on the motion for a new trial that the question of whether the State's action was "palpably unreasonable," as referred to in N.J.S.A. 59:2-3(d), was a question for the judge and not the jury, and alternatively, that the jury was wrong in finding the State's action palpably unreasonable. See also N.J.S.A. 59:4-2 as to the term "palpably unreasonable." The court is of the opinion that this contention is too late or at very least was waived by the State  if not indeed incorrect as a matter of law. The State submitted proposed requests to charge to the court at the beginning of the trial, including a specific request as to the term "palpably unreasonable". The court defined the term almost verbatim from that request in the following language:
The term "palpably unreasonable" in this particular context means plainly, obviously, patently, distinctly or manifestly unreasonable. For a public entity to have acted or failed to act in a fashion which is palpably unreasonable, it must be manifest and obvious that no prudent person would approve of its course of action or inaction.
The court told the jury to apply that definition in considering discretionary activities[11] of a public entity and charged the jury in that respect.
The State refers to the language in N.J.S.A. 59:2-3(d) which provides in part:
A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable.
Based on the quoted phrase in this section that "a court concludes," the State argues this means the judge. *217 The State argues certain other sections of the Tort Claims Act which, prior to the amendment by L. 1975, c. 3 required determinations by the judge as to public entity defendants. In effect the argument runs that since this section was not amended in 1975, the Legislature intended that the judge determine this issue. The court holds that these 1975 amendments were sufficient to change the effect of the language in N.J.S.A. 59:2-3(d) without the necessity of further amendment since the basic intent was to treat public entities and other defendants the same insofar as jury trials are concerned. This legislative intent is also spelled out in the Introductory Statement[12] to Assembly Bill No. 2307 which *218 became chapter 3 of the Laws of 1975. Although it is correct to say that the statute distinguishes between factfinder or jury and the judge (see N.J.S.A. 59:9-1 and 59:9-1(c)), it is obvious that the 1975 amendments did not have to amend the phrase "a court" in N.J.S.A. 59:2-3(d) to refer expressly to either the finder of fact or the judge of the law to accomplish the sponsor's statement that the "bill would permit trial by jury of all issues where the appropriate jury demand is made." Indeed, the term "court" can take into account the functions of both a jury (where demanded) and the judge. N.J.S.A. 59:4-2 contains no language even suggesting that the issue of negligent maintenance of property is other than for the factfinder. The court holds here that since the issue was never raised at any time at or before the trial, and was the subject of specific request by the State to charge the jury, it has been waived. Contrary to the State's contention, the application of general principles of jury trials makes it clear that it is a jury question of whether or not the State's actions were "palpably unreasonable," subject to the instructions by the court as to the law, and except in cases where reasonable men could not differ. It is clearly, then, the tradition in this State that, subject to the aforementioned qualifications, questions of reasonableness or unreasonableness are fact questions for a jury. Here, there was sufficient credible evidence from which the jury could have found adversely to the State.
The State raises for the first time that the jury could not have concluded the State was a proximate cause of the accident *219 because of a phantom car which everyone conceded came out of the driveway of a gas station in the area, "causing" defendant Terry to veer to the left. The State now complains that the phantom driver was not a party. Presumably this is now raised because mentioned by the court at oral argument on the first post-trial application as to the distribution aspect. See Point I, supra. This issue likewise was not raised below. Again, since the case was not tried on this theory, the issues and objections are untimely and have been waived. See Nieder v. Royal Indem. Ins. Co., supra and Rasmussen v. Nielsen, supra.
The State argues that N.J.S.A. 59:9-4(b) requires that the comparative negligence formula be applied only with respect to parties to the action and that there is no provision for assigning negligence to a nonparty. Even accepting this position, arguendo, the State could have joined a typical, fictional "John Doe" defendant.
As to the other grounds for denying the motion for a new trial, the court detailed its reasons on the record and they are omitted from this written opinion.
The motion for a new trial or for a judgment notwithstanding the verdict is denied. No costs.
NOTES
[1] The two amounts represented the full amount of defendant Terry's insurance policy, less $4,600 paid Sadie McCoy, a passenger in his vehicle.
[2] The jury found defendants Terry and the State negligent when Terry, driving westbound on State Highway 4 on August 25, 1974, turned his wheel into the divider when startled by a car exiting from a gas station and headed toward his car's right side. The Terry vehicle jumped the divider and rammed the eastbound car driven by plaintiff Ferreira, causing his injuries and resulting in the death later that day of his passenger wife (age 44). Decedent was survived by a husband and four minor children. The jury in effect found the State's negligent maintenance of a portion of the highway at the western end of the Hackensack River bridge created a dangerous condition which proximately contributed to the accident along with the negligence of Terry. It was undisputed that the road bed on the west side of the bridge had settled to an extent below the actual level of the bridge. At the time of the accident a macadam patch over the "easer" had certain worn areas or potholes.
[3] The survival action award included the funeral bill less $1,000 excluded by N.J.S.A. 39:6A-4(e) since the provisions of the New Jersey Automobile Reparation Reform Act (the No-Fault Law) applied to this case.
[4] See Report of the Attorney General's Task Force on Sovereign Immunity, 235-236 (1972). For convenience this report is referred to herein as the 1972 comments to the various sections of the statute.
[5] N.J.S.A. 59:9-4 (as amended by L. 1975, c. 3, § 2) is retroactively applicable to this case by virtue of § 4 of L. 1975, c. 3.
[6] As to pro rata percentage on $15,000 paid as settlement to the administrator by Terry, and based on the total jury award limited to the death and survival actions of $143,949, the percentage computations are:

Death action 0.9378 (rounded) (derived from a fraction of $135,000 over 143,949).
Survival action 0.0622 (rounded) (fraction $8,949 over $143,949).
[7] As to the pro rata percentage based on a $2,500 settlement in the wrongful death, survival, and plaintiff Herbert Ferreira's actions, and the aggregate verdict of $158,949, the percentage computations are:

Death action 0.849329 (135,000 over 158,949)
Survival action 0.0563 (8,949 over 158,949)
Herbert Ferreira's action 0.0943698 (15,000 over 158,949)
[8] Since the rule excludes such prejudgment interest as to public entities, a Winberry v. Salisbury, 5 N.J. 240 (1950), issue is avoided.
[9] See, e.g., Peterson v. Edison Tp. Bd. of Ed., 137 N.J. Super. 566 (App. Div. 1975), and La Barrie v. Jersey City Housing Auth., 143 N.J. Super. 61 (Law Div. 1976), in which the issue was resolved on summary judgment motions. There is a conflict among trial courts which have addressed the proof burden under the No-Fault Law. Compare Seskine v. Cone, 139 N.J. Super. 307 (Law Div. 1976) (plaintiff must prove), and Fennel v. Ferreira, 133 N.J. Super. 63 (Law Div. 1975) (affirmative defense for defendant).
[10] The testimony in plaintiffs' case was to the effect that her husband told her to put her seat belts on, he noticed her starting to buckle them on, but he recalled nothing further about it. There was an argument made that they might have come undone on impact. The State offered testimony of a doctor who described her injuries to present an inference that seat belts were not on decedent.
[11] Plaintiff never disputed applicability or relevance of that section.
[12] "The New Jersey Tort Claims Act requires that all claims against a public entity or a public employee acting within the scope of his employment be heard by a judge sitting without a jury. On the other hand, the right of trial by jury is preserved for claims involving defendants other than public entities or public employees acting within the scope of their employment where appropriate demand for jury trial is made. Consequently, whenever a claim involves such multiple defendants, certain issues of the case are to be determined by a judge without a jury while other issues in the same case may be determined by the jury. This disparity of procedures presents a potential for inconsistent findings by the judge and jury and great confusion in seeking to hear and dispose of these cases involving such multiple defendants. It may be required that one case be divided into separate component parts with separate trials. Cross claims for contribution and indemnification add to the difficulty.

The problem is further compounded by the comparative negligence law which requires the trier of the fact to determine the amount of damages in negligence actions and also to attribute degrees of negligence to each of the parties involved. In addition, the comparative negligence features of the Tort Claims Act are inconsistent with the general law providing for comparative negligence. Under the general law, if the negligence of the claimant exceeds the negligence of the person against whom recovery is sought, there will be no recovery. Under the Tort Claims Act it is possible for a claimant to recover even though he was negligent to a greater degree than the other party. These two distinct principles of law must be applied to determine whether a plaintiff will recover where multiple defendants are involved.
This bill would permit trial by jury of all issues where the appropriate jury demand is made. The comparative negligence provisions of the Tort Claims Act have been replaced by those of the general law.
Section 3 of the bill reiterates the existing right of a court to reduce excessive or increase inadequate verdicts and judgments as authorized by the Rules of Court.
There are presently pending before the courts a number of actions commenced under the Tort Claims Act which involve such multiple defendants. The bill is retroactive to include all actions which have accrued after the effective date of the Tort Claims Act (June 1, 1972) and which have not been reduced to judgment."