**Gunnar GREENEMEIER, a minor by his parent and next friend, Lois REDINGTON, and Lois Redington, individually, Plaintiffs-Appellants,**

v.

**Darwin SPENCER, Defendant-Appellee.**

No. 82CA1464.

Colorado Court of Appeals,
Div. III.

July 5, 1984.

Rehearing Denied As Moot
July 5, 1984.

Rehearing Denied Aug. 2, 1984.

Certiorari Granted Jan. 14, 1985.

Galchinsky & Silverstein, Herbert H. Galchinsky, Edward Grossman, Denver, for plaintiffs-appellants.

Henderson & Streeleman, Jack D. Henderson, Denver, for defendant-appellee.

VAN CISE, Judge.

In this personal injury action, plaintiffs, Gunnar Greenemeier and his mother, Lois Redington, received a jury verdict in their favor totaling $58,000 in compensatory and $1,000 in exemplary damages against defendant, Darwin Spencer. Because they had settled their claims for the same injury against three co-defendants for $100,000, the trial court ordered the jury award against Spencer reduced to zero compensatory and $1,000 exemplary damages and entered judgment accordingly. Plaintiffs appeal the order and judgment. We affirm.

Two boys, David Sacco and Darwin Spencer, were shooting BB guns. Plaintiff Gunnar Greenemeier was hit in the eye by a BB fired by Sacco. Plaintiffs sued both boys and their parents.

A few days before trial the Saccos settled the claims against them for $100,000. The action was dismissed as to them.

The claims against the Spencers went to trial. This resulted in a directed verdict in favor of Mr. and Mrs. Spencer and jury verdicts against Darwin Spencer in favor of Gunnar for $50,000 compensatory and $1,000 exemplary damages and in favor of Gunnar's mother for $8,000 compensatory damages.

Spencer then timely filed a motion to reduce the jury awards to zero, based on § 13–50.5–105(1), C.R.S. (1983 Cum.Supp.) of the Uniform Contribution Among Tortfeasors Act (the Act). That section provides:

"When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

"(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and

"(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

Relying upon the statute, the trial court granted the motion in part, reducing the compensatory damages to zero but enter-

ing judgment for the $1,000 exemplary damages.

## I.

On appeal, relying on § 13–50.5–102(3), C.R.S. (1983 Cum.Supp.), plaintiffs claim that, since exemplary damages were awarded against Spencer, he is not entitled to any right of contribution. We agree that he has no right of *contribution*, but that does not change the result in this case.

The Act changed the Colorado law relating to contribution among joint tortfeasors. Prior to the Act, one of several joint tortfeasors could not obtain contribution from a co-tortfeasor. Now, under the Act, one tortfeasor who has paid a settlement may seek contribution from his co-tortfeasor for any payment he has made above his pro rata share. *In re Question Submitted by U.S. District Court*, 196 Colo. 392, 586 P.2d 224 (1978). An exception to that rule is contained in § 13–50.5–102(3) relied on by plaintiffs: "[T]here is no right of contribution in favor of any tortfeasor who has intentionally, willfully, or wantonly caused or contributed to the injury...."

However, the fact that, under the circumstances of this case, Spencer has no right of contribution from Sacco or, as applicable here, Sacco may have no right of contribution from Spencer, is of no consequence here. "Contribution" is the right of recovery by one joint tortfeasor from the co-tortfeasor. It has nothing to do with the rights of the injured party to recover from the tortfeasors.

The section under which the jury award was reduced, § 13–50.5–105(1)(a), C.R.S. (1983 Cum.Supp.), pertains only to reduction of the injured party's claim. And, the plain words of the statute direct that the claim against one joint tortfeasor, here Spencer, is to be reduced by the amount paid by the co-tortfeasors, the Saccos.

Spencer did not appeal the retention of the exemplary damages award and the judgment entered thereon. Therefore, we do not address the question whether § 13–50.5–105(1)(a) applies to exemplary damages also.

## II.

The trial court was informed of the settlement and, on the morning of the trial, a discussion took place in chambers concerning what the jury should be told about it. Plaintiffs' attorneys requested the court to let the jury know that the Saccos had settled with plaintiffs for the sum of $100,000. The Spencers' attorneys suggested that the court inform the jury that plaintiffs had settled their claims against the Saccos but that the amount of the settlement should not be mentioned. The court decided not to tell the jury anything about the settlement.

No one asked for the jury to be told that, as a result of the settlement, any award against the Spencers would be reduced by the amount of the Sacco settlement. And, no instructions were tendered on the subject of the settlement. The jury was instructed that, if it held for plaintiffs, it should award them an amount that would reasonably compensate them for their damages.

On appeal, plaintiffs no longer contend that the jury should have been told the amount of the settlement. But they do assert that it was reversible error not to have told the jury that the Saccos had settled before trial. We do not agree.

There are no reported cases in Colorado dealing with whether or what a jury should be told about settlement. There is no unanimity in the case law from other jurisdictions. *See* Annot., 94 A.L.R.2d 352 (1964). Any solution to this question has a potential for unintended and unjust results.

Where, as here, there is no question for determination by the jury with regard to the fact of settlement or the amount paid therefor, some courts have held that this information should be given to the jury and that it, and not the court, should then deduct from the plaintiff's total damages the amount received by him from the settlement. *See, e.g., Croda v. Sarnacki*, 106 Mich.App. 51, 307 N.W.2d 728 (1981). Others have held, in situations where, in one

way or another, the information has come to the attention of the jury during the course of the trial, that the jurors must be instructed to determine the liability of the defendant on trial and the total amount of plaintiff's damages without regard to the settlement, with any later apportionment or deduction to be made not by the jury but by the court. *See, e.g., Theobold v. Angelos,* 40 N.J. 295, 191 A.2d 465 (1963). In some jurisdictions, whether to tell the jury is left to the discretion of the trial court. *See, e.g., Groves v. Compton,* 280 S.E.2d 708 (W.Va.1981); *Degen v. Bayman,* 86 S.D. 598, 200 N.W.2d 134 (1972).

Some have held, as did the trial court in the instant case, that it is proper not to tell the jury about the settlement and for the court to credit the unreleased tortfeasor after the jury has returned a verdict for the full amount of plaintiff's damages. *See, e.g., Slayton v. Ford Motor Co.,* 140 Vt. 27, 435 A.2d 946 (1981); *McCombs v. Stephens,* 252 S.C. 442, 166 S.E.2d 814 (1969); *DeLude v. Rimek,* 351 Ill.App. 466, 115 N.E.2d 561 (1953).

█ The better rule is that applied by the trial court here, not informing the jury of the fact or amount of settlement and, instead, instructing the jury to determine whether the defendant on trial was liable and, if so, to determine the full amount of plaintiff's damages. Admittedly, the jurors may be concerned about the absence of the other tortfeasor. However, from the viewpoint of both defendants and plaintiffs, the dangers of improper inferences and the possibilities of confusion and prejudice on the part of the jury are much greater if the jurors know about the settlement and, especially, if they are required to consider the offset in arriving at the amount of plaintiff's damages.

For more detailed discussion of the issues involved, *see Dixson v. Newsweek, Inc.,* 562 F.2d 626 (10th Cir.1977); *Luth v. Rogers,* 507 P.2d 761 (Alaska 1973); *Egurrola v. Szychowski,* 95 Ariz. 194, 388 P.2d 242 (1964); *DeLude v. Rimek, supra; Orr v. Coleman,* 455 S.W.2d 59 (Ky.App.1970); *McCombs v. Stephens, supra; Degen v.*

*Bayman, supra; Slayton v. Ford Motor Co., supra.*

█ Moreover, matters pertaining to settlement with a co-tortfeasor are irrelevant to the issues being tried, *i.e.,* the questions of the liability of the nonsettling defendant and the amount of plaintiff's damages. *Egurrola v. Szychowski, supra.* Only after the jury has held for plaintiff on these issues is it proper to consider the effect of the settlement, and that matter should be left for the court to determine, upon application of the defendant after verdict. *DeLude v. Rimek, supra.*

Judgment affirmed.

STERNBERG, J., concurs in part and specially concurs in part.

ENOCH, C.J., concurs in part and dissents in part.

STERNBERG, Judge, concurring and specially concurring.

I concur with the result reached in both parts of the majority opinion. I do so as to Part II because I do not view failure to instruct on the issue as constituting prejudicial error. It cannot be demonstrated if, and in what way, the verdict here would have been different had the jury been instructed in the manner urged by the dissent. In my view, however, justice would best, and most clearly, be served in cases such as this if juries were instructed along the lines suggested in the dissenting opinion.

ENOCH, Chief Judge, concurring in part and dissenting in part.

I concur with Part I, but respectfully dissent from Part II of the majority opinion.

The primary issue before this court is whether, in a case involving possible multiple tortfeasors, a jury should be informed that a settlement has been reached between the plaintiff and one or more of the possible defendants. If so, a secondary issue arises as to whether the amount of

the settlement should be disclosed to the jury.

The majority concedes that if the jurors are told nothing of the settlement, and if, as here, they will know from the evidence that there is at least one other tortfeasor besides the defendant, they will be concerned about the absence of the other tortfeasor. In my view, such concern may lead to speculation which could affect the damage award one way or the other. For example, the jury might well award just one-half of the damages to which it believes plaintiff was entitled, believing that plaintiff will recover a similar amount from the absent tortfeasor.

On the other hand, if the jury is informed that a settlement was reached with the one or more of the missing tortfeasors, and is also informed of the amount of the settlement, an improper damage award may result. In such instance, the jury might consider that the amount of settlement represents an agreement by all concerned that each defendant should be liable for that amount of damages. Acting on that belief, the jurors would award a like amount against the defendant before them which, under our construction of the Uniform Contribution Among Joint Tortfeasors Act, would effectively absolve defendant from any liability.

Therefore, in my view, the jury should be informed of the fact of settlement, but not the amount paid. When the jury has such information, speculation will be avoided as to the reason for the absence of the other potential defendants. However, if the jury finds the defendant before them as being concurrently responsible to plaintiff with the tortfeasors who have settled with plaintiff, it becomes vitally important that the jurors appreciate the significance of the settlement in connection with their duty to assess damages. Accordingly, they should be clearly instructed as to the course they are to follow in reaching their verdict. *See Theobold v. Angelos,* 40 N.J. 295, 191 A.2d 465 (1963).

The instructions should emphasize to the jury that its duty is to decide whether or not the defendant before it is liable to the plaintiff, and then to determine the total amount of damages, if any, which would reasonably compensate plaintiff for all of his injuries and losses. The jury should be further instructed that this computation of damages is to be made without regard to any potential defendants not involved in the litigation, and that it should not attempt to apportion the amount of the award based on the number of apparently culpable persons involved. Then, it should be instructed that when its verdict awarding full compensation is returned, it will be apportioned by the court, as the law dictates, among the defendant found responsible by the jury and the other persons who have made settlements with plaintiff.

This rule reflects the recognition that jurors collectively represent a cross-section of the community. Juries are charged with determination of factual issues, and are instructed to apply the law to their findings of fact in arriving at their verdicts. A realistic approach requires that we recognize the fact that juries will anticipate the consequences of their findings. As stated in *Simpson v. Anderson,* 33 Colo.App. 134, 507 P.2d 416 (1973), *reversed,* 186 Colo. 163, 526 P.2d 298 (1974):

"The manner in which the law applies to a given state of facts should not be a closely guarded secret which is known only to judges and lawyers. It will, in fact, ultimately become known to at least some members of the community who will be asked to sit upon juries. It is far better for courts to be the vehicle by which the operation of the law is explained than to rely upon whatever chance understanding may come the way of potential jurors."

For these reasons, I would reverse the judgment and remand for a new trial on the issue of damages, with directions that the jury be properly instructed as outlined above.