JEANETTE WATERSON, (FORMERLY JEANETTE RATHAM), PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. GENERAL MOTORS CORPORATION, A CORPORATION, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND REEDMAN MOTORS CORPORATION, A CORPORATION, DEFENDANT.

Argued February 1, 1988—Decided July 27, 1988.

*Edward J. Fanning* argued the cause for appellant and cross-respondent (*Morley, Cramer, Tansey, Haggerty & Fanning,* attorneys).

*Mitchell H. Portnoi* argued the cause for respondent and cross-appellant (*Shevick, Ravich, Koster, Tobin, Olecknα & Reitman,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

Plaintiff's car went out of control and crashed into a utility pole. A defective right rear axle shaft on plaintiff's car caused the accident. At the time of the accident plaintiff was not wearing a seat belt. This appeal focuses on what effect, if any, plaintiff's failure to wear a seat belt has on her right to recover damages for the personal injuries she received as a result of the accident caused by the defective axle.

The general principle that we adopt in this case is that if a jury finds that a plaintiff's failure to wear a seat belt constitutes negligence that contributed to plaintiff's injuries and damages, that negligence shall be considered in determining plaintiff's award. This principle will require only a limited expansion of the jury's responsibilities in automobile accident cases. If a jury finds plaintiff negligent for failure to wear a seat belt, plaintiff's recovery for injuries that could have been avoided by seat-belt use may be reduced by an amount reflecting plaintiff's comparative fault in not wearing a seat belt. We refer to the damages that arise from these avoidable injuries as "seat-belt damages." The jury may take into account plaintiff's negligent failure to use a seat belt only to reduce plaintiff's recovery for these seat-belt damages. Plaintiff's failure to wear a seat belt will not affect recovery for injury and damages that would have occurred regardless of whether plaintiff had worn a seat belt. The amount of the reduction of seat-belt damages must fairly reflect all of the parties' contributions to the seat-belt damages: defendant's contribution in causing the accident in the first place, plaintiff's contribution in causing the accident in the first place, and plaintiff's contribution to the extent of his or her injuries in not wearing a seat

belt. The court will mold these jury findings, expressed as percentages of comparative fault, into the final verdict.

Considerations of fairness and public policy, as expressed in this state's mandatory seat belt law, lead us to the principle we announce today. Our focus is on the avoidance of injury; unquestionably, persons in certain instances could avoid certain injuries from automobile accidents if they wore seat belts. Thus the principle we announce does not concern a plaintiff's fault in causing an automobile accident and, accordingly, does not rest on this state's comparative negligence law.

I

On April 9, 1980, at approximately 12:30 in the afternoon, plaintiff was driving her 1979 Chevrolet Monte Carlo along Broadway in Clark, New Jersey. It was raining and the road surface was wet. Plaintiff was traveling at a speed of twenty-five to thirty miles per hour. Christopher Corbett, the driver of a vehicle traveling approximately 100 feet behind plaintiff's vehicle, testified about what happened next. According to Mr. Corbett's testimony, as plaintiff was coming out of a bend in the road, "there was a drastic move of the rear end of the car towards the curb and from that point on [the car] just went straight for the telephone pole." Plaintiff, who was traveling with only her two cats, has no recollection of the accident or the moments preceding it. Plaintiff was not wearing the available passenger restraint system [1] (seat belt) at the time of the accident.

Following the accident, plaintiff was taken to Rahway Hospital and examined by Dr. Mark Schottenfeld, the orthopedic surgeon on call in the emergency room. Dr. Schottenfeld testified that plaintiff had sustained bilateral dislocations of the

---

[1] The system installed in Mrs. Waterson's automobile was a three point lap belt-shoulder harness system of the type commonly found in almost all vehicles on the roads of this state for the past ten to fifteen years. For convenience, hereinafter it will be referred to as the "seat belt."

hips, a fracture of the left clavicle, a fracture of the left fourth rib, and an open fracture (an open fracture means there was a laceration in the area) of the right patella. Plaintiff also had a right eye that was totally red, a cut that stretched from the left eye down her nose, and a fractured nose.

Within a matter of hours after the accident Dr. Schottenfeld performed a closed reduction of the hip dislocations under general anesthesia. Once Dr. Schottenfeld completed this procedure, he confined plaintiff to her hospital bed; her entire lower extremities were placed at rest with traction exerted on the legs until late April 1980. Dr. Schottenfeld treated the fracture of plaintiff's left clavicle by putting the left arm in a sling for two weeks in order to immobilize it. The surgeon did not treat the open fracture of the right patella since the plaintiff was already immobilized due to the hip dislocations.

Late in April, after the traction was removed, plaintiff was able to get out of bed and into a wheelchair using only her arms to support herself. Dr. Schottenfeld counseled plaintiff not to try to walk because he believed the avoidance of stress on her hip joints would diminish the probability of permanent damage or deterioration of the joints. Approximately one month after the accident, Dr. Schottenfeld discharged plaintiff from the hospital. When she left the hospital, she was still experiencing soreness in her hips, shoulder, and kneecap. Additionally, her ribs were so sore that when she coughed or took a deep breath she experienced pain. Mrs. Waterson remained confined to a wheelchair for three months following her discharge during which time she stayed at her parents' home.

In June 1980, plaintiff was readmitted to Rahway Hospital for a rhinoplasty (restructuring of the fractured nose), a surgical procedure performed under local anesthesia. Following surgery, plaintiff's nose was sore and remained in a cast for two weeks. Once the cast was removed, plaintiff was pleased with the results of the operation. After spending three days at Rahway Hospital, she returned to her parents' home.

In July 1980, plaintiff began to walk with the aid of crutches. She remained on crutches until August 1980. Once plaintiff discarded her crutches, she experienced soreness when she walked or when she stood or sat for a prolonged period of time. On August 31, 1980, approximately five months after the accident, plaintiff returned to her job with Dental Associates as a chairside dental assistant. At the time of the accident, plaintiff earned approximately $150 a week after taxes.

At trial, plaintiff testified that she continued to suffer physical pain as a result of the injuries she sustained in the accident. Her treating physician and only medical witness, Dr. Schottenfeld, testified that he could not "in any way predict whether the injuries she sustained would cause 'future problems.' " Based on Dr. Schottenfeld's inability to predict future difficulties arising from plaintiff's injuries, the trial court precluded plaintiff from soliciting his opinion regarding the permanency of her injuries. Significantly, with regard to the nose fracture, plaintiff had suffered damage to her nose prior to this automobile accident. Due to this previous injury and plaintiff's intent to have surgery on the nose even before the accident, the trial court refused to allow admission into evidence of the Rahway Hospital records concerning this operation.

Finally, concerning plaintiff's injuries, Dr. Schottenfeld also testified that as of his last pretrial examination on June 28, 1983, plaintiff "had full ... internal and external rotation of the hip." He remarked that he had no way of comparing plaintiff's post-accident hip rotation with her hip rotation prior to the accident since he had not examined her before the accident. At the time of the trial plaintiff was a registered nurse and was employed as an operating room nurse.

Plaintiff sued General Motors Corporation, the manufacturer of her automobile, and Reedman Motors Corporation, the dealership that sold the car, for injuries arising out of the accident. The parties raised several evidentiary questions at two pretrial *Rule* 8 hearings. Following the second *Rule* 8 hearing, the

trial court ruled by letter opinion that plaintiff's failure to use the seat belt was admissible; but before a jury could consider seat belt testimony, "there must be 'satisfactory evidence' to support a finding that plaintiff's failure to use the seat belt was a substantial contributing factor to her injuries." Subsequently, at trial, the court applied this ruling as a comparative negligence concept to plaintiff's injuries.

Plaintiff produced an expert witness, Dr. Ciesla, who testified regarding the alleged axle defect. The only additional witnesses, other than herself, produced by plaintiff were Christopher Corbett, the eyewitness; Officer Roy George, the policeman called to the scene; and Dr. Schottenfeld.

Defendants introduced expert testimony regarding the axle from Dr. Edward Reynolds, a Senior Staff Analysis Engineer for General Motors, who contradicted plaintiff's expert's testimony concerning the allegedly defective axle shaft. In conjunction with Dr. Reynolds' testimony, defendant produced several videotapes of General Motors crash tests. Although at trial General Motors repeatedly challenged the factual foundation of Dr. Ciesla's conclusions, on appeal General Motors dropped this claim, and conceded that the axle was the cause of the accident. Defendant also introduced expert testimony regarding the seatbelt issue from Frank Montalvo, a biomedical engineer employed by General Motors. Mr. Montalvo's testimony, which speaks to the central issue in this appeal, is fully discussed below. *Infra* at 246–47.

The trial court denied motions by defendant General Motors for dismissal at the conclusion of plaintiff's case and again at the conclusion of defendant's case. The jury awarded plaintiff damages of $28,000 against both defendants. The jury also found that plaintiff's failure to wear her seat belt proximately contributed forty percent (40%) to her injuries. The trial court reduced plaintiff's recovery to $16,800 plus interest and costs to reflect her negligence. The court also entered judgment in

favor of defendant Reedman Motors Corporation on its cross-claim for indemnification against General Motors.

The court denied a motion for *additur* or, in the alternative, for a new trial on damages on behalf of the plaintiff and a motion for judgment *n.o.v.* on behalf of defendant General Motors. Defendant General Motors appealed the trial court's decision and plaintiff cross-appealed. The Appellate Division affirmed the trial court's findings on all issues. Specifically, the Appellate Division ruled that plaintiff could not object to the submission of the seat-belt question to the jury on appeal since she had not objected at trial. The Appellate Division also concluded that the damages award was permissible and that the trial court had properly denied plaintiff's *additur* motion. The jury verdict, according to the court, should not be disturbed.

Subsequently, defendant General Motors filed a Petition for Certification on the seat belt issue and plaintiff filed a Cross-Petition for Certification seeking *additur* or, in the alternative, a new trial on damages. We granted both petitions for certification, 108 *N.J.* 575 (1987).

## II

We begin our analysis of the seat-belt defense by reviewing the specific evidence regarding seat-belt use. The only expert testimony in connection with the use of seat belts was given by Frank Montalvo, a biomedical engineer, who has a Bachelor's Degree in Physics and Mathematics and a Master's Degree in Biomedical Engineering from the University of Michigan. He is employed by General Motors, where he is senior engineer of the safety research and development laboratory, and is a member of the American Association for Automotive Medicine and the Society of Automotive Engineers. For over seven years, he has designed and supervised crash tests and other similar experiments to study the impact of automobile collisions on the occupants of automobiles. He testified that he has observed several hundred crash tests in which the purpose was to study

the movement of human occupants of an automobile during a collision through the use of dummies. On the basis of these credentials, the trial court qualified Mr. Montalvo as an expert on the seat belt issue.

Mr. Montalvo testified in detail concerning the injuries sustained by plaintiff. He also testified about the occupant kinematics,[2] or movement of the occupant of an automobile during a collision, and the specific causes of each of plaintiff's injuries, and the specific parts and surfaces of the car's interior with which plaintiff came into contact during the crash. Mr. Montalvo primarily relied on police records and photographs to form his opinions of the part that seat belts would have played in protecting plaintiff. Ultimately, his opinion was that plaintiff would not have sustained any of her injuries had she been wearing her seat belt at the time of the accident. Montalvo outlined which details of the interior of the wrecked automobile substantiated his view that plaintiff could have walked away from this accident if she had been wearing her seat belt. On cross-examination, Montalvo acknowledged that at the time of the accident only twelve to fifteen percent of automobile occupants used their seat belts.

Montalvo's testimony constituted the only evidence before the jury concerning the seat belt issue. Plaintiff did not present any seat belt evidence. At the close of its case, defendant General Motors moved for a dismissal contending, *inter alia,* that the unrefuted testimony of Montalvo conclusively established that plaintiff would have sustained no injury had she been wearing a seat belt. The trial court rejected defendant's contention and denied the motion. On appeal, the Appellate Division also rejected defendant's argument "substantially for the reasons stated by Judge Ironson in his May 14, 1985 letter opinion."

---

[2]Webster's Third New International Dictionary defines "kinematics" as "a branch of dynamics that deals with aspects of motion (as acceleration and velocity) apart from considerations of mass and force." *Id.* at 1243.

■ Initially, we note that the trial court and Appellate Division properly determined that the seat belt issue should go to the jury. The lower courts' determination comports with case law and common sense. *See, e.g., Amaru v. Stratton*, 209 *N.J.Super.* 1 (App.Div.1985). To be sure, Montalvo's expert testimony was "uncontradicted" by any expert testimony offered by plaintiff. Nonetheless, as recognized by the trial court, the jury could have found that plaintiff's failure to wear a seat belt was not negligence. Mr. Montalvo himself testified that in 1980 only twelve to fifteen percent of the population wore seat belts. Moreover, even if the jurors found plaintiff was negligent, they were not compelled to accept Mr. Montalvo's testimony. Defendant is not entitled to a directed verdict simply because plaintiff did not produce expert testimony contradicting the testimony produced by defendant. *See State in the Interest of C.A.H. & B.A.R.*, 89 *N.J.* 326, 343 (1987) ("Obviously, the court was not required to give controlling effect to the testimony of the experts. Expert testimony need not be given greater weight than other evidence or than it otherwise deserves in light of common sense and experience.") (citations omitted); *Amaru v. Stratton, supra*, 209 *N.J.Super.* at 20 ("A jury has no duty to give controlling effect to any or all of the testimony provided by the parties' experts, even in the absence of evidence to the contrary. 'The jury may adopt so much of it as appears sound, reject all of it, or adopt all of it.' ").

In this case, various inferences can be drawn from the evidence. It is not disputed that plaintiff's automobile struck the utility pole at the scene of the accident while traveling approximately thirty miles per hour. The jury itself watched a series of videotapes of crash tests conducted by General Motors illustrating the very significant forces that can be generated in this type of front-end impact with an immovable object and its effect on unrestrained dummies. The jury did not observe videotapes demonstrating the effect of such an impact on restrained dummies. Furthermore, Mr. Montalvo never testified that tests on restrained dummies showed a complete lack

of movement of these dummies or that on a similar impact as in this case a restrained dummy would make no contact with the steering wheel, dashboard, or other parts of the interior of the car. Finally, the jury knew Mr. Montalvo was an employee of General Motors. Plainly, this fact could weigh heavily in assessing the credibility and objectivity of his testimony. *See Haver v. Central R.R. Co. of New Jersey*, 64 *N.J.L.* 312 (E. & A. 1900); *State v. Taylor*, 38 *N.J.Super.* 6 (App.Div.1955).

The jury, therefore, could reach its own conclusions concerning the effect of the collision on plaintiff and the effect of plaintiff's failure to use her seat belt. As the trial court aptly stated, "[j]ust because Mr. Montalvo said it, did not mean that the Court as a matter of law had to accept it or that the jury as the fact finders had to believe him." Thus, we conclude that the trial court properly denied defendant's motion for a directed verdict on the sole ground of the proffered expert testimony of its employed expert, Mr. Montalvo.

We also recognize that plaintiff failed specifically to object at trial to the admission of the seat belt testimony. She also failed to object to the charge given by the trial court regarding the seat belt issue. The Appellate Division concluded that plaintiff's failure to object to the submission of this issue to the jury was fatal to her claim on appeal. *See Fox v. Township of Parsippany-Troy Hills*, 199 *N.J.Super.* 82, 89 (App.Div.), certif. den., 101 *N.J.* 287 (1985); *R.* 1:7–2. Consequently, the Appellate Division never reached the merits of the seat-belt defense.

Although plaintiff never made a formal objection to the submission of the seat belt issue to the jury, she did strenuously argue against admitting any seat belt evidence at the hearings on the *in limine* motions. *Rule* 1:7–2. in pertinent part, provides:

> For the purpose of reserving questions for review or appeal relating to rulings or orders of the court or instructions to the jury, a party, *at the time the ruling or order is made or sought, shall make known to the court specifically the action which he desires it to take* or his objection to the action taken and the grounds therefor. [*R.* 1:7–2 (emphasis added).]

Clearly, plaintiff made known her desire that seat belt testimony be excluded at the time the order was sought regarding the admissibility of seat belt testimony. Plaintiff's position, therefore, is compatible with a literal reading of *R.* 1:7–2 and with the policy goals beyond the *Rule.*

The primary policy justification for the requirement of timely objection is to enable the trial court to take appropriate curative action, if possible, where an error has been made. *See, e.g., State v. Douglas,* 204 *N.J.Super.* 265 (App.Div.), certif. den., 102 *N.J.* 378 (1985). It cannot be argued under these facts that the trial court was unaware of plaintiff's arguments before formulating the jury charge.

Moreover, "[i]t is a well-settled principle that appellate courts should decline to consider issues not fully presented at trial *unless* the issues are jurisdictional or *concern matters of great public interest." Matter of Board of Educ. of Town of Boonton,* 99 *N.J.* 523, 536 (1985), *cert.* den., 475 *U.S.* 1072, 106 *S.Ct.* 1388, 89 *L.Ed.*2d 613 (1986) (emphasis added). Accordingly, appellate courts may consider matters of significant public interest even though, strictly speaking, the matter has not been procedurally preserved.

In this case, admission of the seat-belt testimony resulted in plaintiff's award being reduced by almost half. Although plaintiff's counsel did not formally object to the jury charge on the issue, counsel vigorously opposed the admission of the seat belt testimony at the pretrial hearings. Furthermore, due to the implications of this case on the safety of motorists and the allocation of the costs of automotive accidents in this State, the issue in this case undoubtedly concerns a matter of great public interest. For all of these reasons, the Court will address the merits of the seat belt defense.

## III

Courts throughout the country and a host of legal commentators have discussed the seat-belt defense extensively, particu-

larly in the context of negligence cases. *See* Ackerman, *The Seat Belt Defense Reconsidered: A Return to Accountability in Tort Law?*, 16 *N.M.Law Rev.* 221 (1986); Note, *The Seat Belt Issue: Judicial Disregard for Legislative Action*, 4 *Alaska L.Rev.* 387 (1987); Note, *A Compromise Between Mitigation and Comparative Fault?: A Critical Assessment of the Seat Belt Controversy and a Proposal for Reform*, 14 *Hofstra L.Rev.* 319 (1986); Note, *The Seat Belt Defense: Must a Reasonable Man Wear a Seat Belt?*, 50 *Mo.L.Rev.* 968 (1985).

Cases and articles discussing the defense in the strict-liability context are much more limited, however. *See Daly v. General Motors Corp.*, 20 *Cal.*3d 725, 575 *P.*2d 1162, 144 *Cal.Rptr.* 380 (1978); *Lowe v. Estate Motors Ltd.*, 410 *N.W.*2d 706, 715 (1987); 2 L. Frumer & M. Friedman, *Products Liability* § 3.01[5] [iii] at 3–116 (1988); Westenberg, *The Safety Belt Defense at Trial and in Out-of-Court Settlement*, 37 *U.Fla.L. Rev.* 785, 803–05 (1985); Ackerman, *The Seat Belt Defense Reconsidered: A Return to Accountability in Tort Law?*, 16 *N.M.L.Rev.* 221 (1986). The seat-belt defense has been widely litigated and the law on the admissibility of seat-belt evidence is clearly in a state of flux. 7 *American Law of Products Liability 3d* ¶ 95:11, at 21 (1988).

To date, three New Jersey cases have discussed the effect of seat-belt use on the principles of contributory and comparative negligence. See *Dunn v. Durso*, 219 *N.J.Super.* 383 (Law Div.1986); *Polyard v. Terry*, 148 *N.J.Super.* 202, (Law Div. 1977), *rev'd* on other grounds, 160 *N.J.Super.* 497 (App.Div. 1978), *aff'd o.b.*, 79 *N.J.* 547 (1979); *Barry v. Coca Cola Co.*, 99 *N.J.Super.* 270 (Law Div.1967).

Prior to *Barry v. Coca Cola Co., supra*, 99 *N.J.Super.* 270 there were no reported New Jersey decisions addressing the seat-belt defense. In *Barry*, the court cautiously opened the door to the seat-belt defense in this state. In that case plaintiff, a passenger, suffered severe facial injuries when her head struck the windshield as a result of a rear-end collision. At the

time of the accident plaintiff was not wearing her seat belt. 99 *N.J.Super.* at 273. In addressing the relevance of plaintiff's failure to use her seat belt, the court properly recognized two separate and distinct questions: first, whether the failure to use a seat belt constituted contributory negligence that barred recovery, and second, if not a complete bar to recovery, whether seat belt nonuse may be considered by the jury in reducing plaintiff's damages. The court emphasized "the necessity of distinguishing negligence contributing to *the accident,* and negligence contributing to *the injuries* sustained." *Ibid.* The court drew a careful distinction between first-collision and second-collision injuries. First-collision injuries represent those injuries that would have occurred irrespective of whether or not the injured party used a seat belt. Second-collision injuries are sometimes referred to as add-on or enhanced injuries, and are injuries that the use of a seat belt arguably could prevent.[3] Relying on its distinction between first- and second-collision injuries, the court ruled that plaintiff's failure to use his seat belt could not completely bar recovery for defendant's negligence in *causing the accident.* As the court observed:

> The fact that plaintiff failed to use the seat belts had nothing to do with the happening of the accident, or that he suffered some degree of injuries, prescinding, for the moment, from their extent. The failure to use seat belts was not a proximate cause or a substantial factor in producing an accident from which 'some' injuries flowed or occurred. [*Id.* at 272–73.]

After concluding that failure to use a seat belt was not a complete bar to recovery, the court next considered whether seat-belt nonuse could be considered by the jury in "diminution of plaintiff's damages." *Id.* at 272. The court adopted the position articulated in the *Restatement (Second) of Torts* § 465 (captioned "Causal Relation Between Harm and Plaintiff's Negligence") that the courts will apportion damages in contributory negligence cases only where the evidence supports a finding

---

[3]We refer, throughout this opinion, to the damages that arise from these second-collision injuries as seat-belt damages.

that plaintiff's negligence was a "substantial contributing factor" to the injuries ultimately sustained.

Section 465 reads:

(1) The plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it.

(2) The rules which determine the causal relation between the plaintiff's negligent conduct and the harm resulting to him are the same as those determining the causal relation between the defendant's negligent conduct and resulting harm to others.

Comment c to § 465 specifically addresses the application of the theory of plaintiff's contribution to the harm to the principle of contributory negligence:

In particular, the rules stated in § 433A as to the apportionment of harm to different causes are applicable in cases of contributory negligence. Where the harm is single and indivisible, it is not apportioned between the plaintiff and the defendant, in the absence of a statute providing for such division of the damages upon an arbitrary basis. Where, however, there are distinct harms, or a reasonable basis is found for the division of a single harm, the damages may be apportioned, and the plaintiff may be barred only from recovery for so much of the harm as is attributed to his own negligence. Such apportionment is commonly made, under the damages rule as to avoidable consequences, where the plaintiff suffers an original injury, and his negligence consists in failure to exercise reasonable care to prevent further harm to himself. See § 918. The apportionment may, however, be made in other cases, as where, for example, the plaintiff has contributed to the pollution of a stream, along with one or more defendants.

*Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation.* [*Restatement (Second) of Torts* § 465 Comment c (1965) (emphasis added).]

Ultimately, the court in *Barry* refused to admit seat belt evidence primarily because defendant had not proffered any "satisfactory evidence that plaintiff's failure to use a seat belt was a substantial contributing factor increasing the harm" plaintiff suffered. The court limited the holding, however, to the facts presented. The court specifically reserved judgment on how it would rule if defendant proffered compelling expert testimony regarding the injuries that plaintiff suffered as a

result of the *avoidable* second collision. *Barry v. Coca Cola Co., supra,* 99 *N.J.Super.* at 275. The court also noted that defendant's burden of producing effective expert testimony would be difficult because any "attempt by the jury to apportion plaintiff's damages which were due to his failure to use seat belts, as against what injuries he would have suffered if the seat belts were used, would be the purest kind of speculation." *Ibid; Restatement (Second) of Torts* § 465 Comment c.

This Court alluded to the failure of specific evidence and defendant's burden on causation in the analogous case of *Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc.,* 53 *N.J.* 157 (1969). There the injured party was standing in a laundry van at the time of a collision. In dicta, we remarked:

> It has been said that in most situations it is better to fasten a seat belt than to ignore it. Even if we assume, as we do *for the purpose of the argument only,* that a reasonable man would fasten an available seat belt, nevertheless those cases which make the same assumption hold that the only way the seat belt defense can go to the jury is if the defendant comes forward with specific evidence demonstrating the causal link; *i.e.,* the relationship between failure to fasten the belt and the plaintiff's injuries. [53 *N.J.* at 162–63 (citations omitted).]

Ten years after *Barry,* in *Polyard v. Terry, supra,* 148 *N.J.Super.* 202, *rev'd* on other grounds, 160 *N.J.Super.* 497, *aff'd o.b.,* 79 *N.J.* 547 the defendant raised the issue of decedent's negligence based on her alleged failure to wear a seat belt. *Polyard* was a wrongful death action against the State arising out of an automobile accident. The trial court granted plaintiff's motion to strike the State's defense. The State then moved for a new trial on the grounds that exclusion of the seat belt testimony was unlawful. The trial court observed that the seat belt defense had not been "clearly established" in New Jersey. 148 *N.J.Super.* at 214. Nevertheless, the court acknowledged "that there might be circumstances where the failure to wear seat belts may be shown by evidence to have substantially contributed to the injury occurring as the result of an accident, justifying an apportionment of damages." *Ibid.* (citing *Barry v. Coca Cola Co., supra,* 99 *N.J.Super.* at 274–75).

In *Polyard*, however, the court held that it would be mere speculation and conjecture to attempt division of damages for failure to wear seat belts in a case where death occurred and where defendant's medical witness did not attempt an apportionment. *Id.* at 215. The State medical examiner's testimony on the effect of the failure to wear seat belts was not only inconsistent and speculative, but the examiner in fact conceded that "even with seat belts on she might have died from other injuries." *Ibid.*

In *Dunn v. Durso, supra,* 219 *N.J.Super.* 383 a New Jersey court found for the first time the necessary circumstances for applying the seat-belt defense in a negligence action. Plaintiff, a front-seat passenger in an automobile driven by her husband, suffered serious facial lacerations and other bodily injuries when her head struck the dashboard and the gear shift box after the vehicle she was in collided head-on with a vehicle driven by defendant. According to plaintiff's testimony, she was not wearing her seat belt at the time of the accident because she expected a short trip and because she desired freedom of movement in order to care for her six-month old infant, who was in the back seat. *Id.* at 385. The accident in *Dunn* occurred on February 6, 1983, approximately three years after the accident in this case.

Defendant argued that plaintiff's recovery should be reduced to the extent that her failure to use the seat belt resulted in second collision injuries. *Ibid.* To support the burden of proof enunciated in *Barry*, defendant proposed to call a licensed professional engineer who had conducted an engineering study of the accident. In the opinion of defendant's expert, plaintiff suffered bodily injury as the result of the second collision (her impact with portions of the interior of the car), which would not have occurred had she been wearing her seat belt. Moreover, plaintiff's injuries, according to defendant, were "attributable primarily to her failure to use the restraining devices avail-

able." *Id.* at 386. Plaintiff moved *in limine* to exclude defendant's proffered expert testimony. *Ibid.* The *Dunn* court denied plaintiff's motion, ruling that the appropriate factual situation had been presented in order to recognize the seat belt defense in New Jersey. *Ibid.* The court concluded that "if a plaintiff acts unreasonably by failing to wear an available and operable seat belt, and such conduct demonstrably causes, or increases, the bodily injury for which compensation is sought, (s)he may not recover the incremental damages (s)he has caused. The seat belt defense expresses and effectuates the long-standing principle that a defendant should not be liable for injuries (s)he did not proximately cause." *Id.* at 386–87.

The *Dunn* court relied heavily on the *Barry* analysis and on the dicta in *Polyard* as the framework for its decision. The court also noted that the accident in *Dunn,* unlike the accident in *Barry,* occurred after the passage of the New Jersey Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.3, which became effective in 1973. Analyzing the effect that the comparative negligence statute had on the *Barry* court's approach, the court turned to Wisconsin law for guidance. The New Jersey Legislature adopted nearly verbatim the Wisconsin comparative negligence statute. Thus, the court invoked principles of statutory construction that call for reference to the decisional authority of the parent state (Wisconsin) in interpreting the local state enactment (New Jersey) of the statute. See *Van Horn v. Wm. Blanchard Co.,* 88 *N.J.* 91, 97 (1981); *Suter v. San Angelo Foundry & Mach. Co.,* 81 *N.J.* 150, 161 (1979); *Todd Shipyards Corp. v. Township of Weehawken,* 45 *N.J.* 336, 343 (1965); *Warshany v. Supermarkets Gen. Corp.,* 161 *N.J.Super.* 515, 521 (Law Div.1978); N. Singer, 2A *Sutherland Statutory Construction* § 51.06, at 510 (Sands 4th ed. 1984).

The Wisconsin Supreme Court has long recognized the seatbelt defense pursuant to its comparative negligence law. *Foley v. City of West Allis,* 113 *Wis.*2d 475, 335 *N.W.*2d 824 (1983); *Bentzler v. Braun,* 34 *Wis.*2d 362, 149 *N.W.*2d 626 (1967). In *Bentzler,* the court found that although a recently enacted

statute mandated that automobiles be equipped with seat belts, there was no obligation to use them. Despite its rejection of the *per se* approach, the opinion in *Bentzler* went on to identify a duty, "based on the common law standard of ordinary care, to use available seat belts independent of any statutory mandate." 34 *Wis.*2d at 385, 149 *N.W.*2d at 639. *Bentzler* recognized that there may be a demonstrable link between wearing seat belts and minimizing injuries. *Id.* at 386, 149 *N.W.*2d at 640.

Subsequently, in *Foley v. City of West Allis, supra,* 113 *Wis.*2d 475, 335 *N.W.*2d 824, the Wisconsin Supreme Court, while noting that wearing seat belts has relevance only to second collision injuries, established a method for applying the seat-belt defense under a comparative negligence scheme. *Id.* at 485, 335 *N.W.*2d at 829. The court's methodology seeks to apportion the total damages between the first and second collisions with the following procedure:

(1) Determine the causal negligence of each party as to the collision of the two cars ...; (2) apply comparative negligence principles to eliminate from liability a defendant whose negligence causing the collision is less than the contributory negligence of a plaintiff causing the collision ...; (3) using the trier of fact's calculation of the damages, reduce the amount of each plaintiff's damages from the liable defendant by the percentage of negligence attributed to the plaintiff for causing the collision ...; (4) determine whether the plaintiff's failure to use an available seat belt was negligence and a cause of injury, and if so what percentage of the total negligence causing the injury was due to the failure to wear the seat belt ...; (5) reduce the plaintiff's damages calculated in step (3) by the percentage of negligence attributed to the plaintiff under step (4) for failure to wear an available seat belt for causing the injury.

[*Id.* at 490, 335 *N.W.*2d at 831.]

The Law Division essentially adopted the Wisconsin approach in *Dunn v. Durso, supra,* 219 *N.J.Super.* 383, and in the case before us.

The New York Court of Appeals in *Spier v. Barker,* 35 *N.Y.*2d 444, 450, 323 *N.E.*2d 164, 167, 363 *N.Y.S.*2d 916, 920 (1974), and the Florida Supreme Court in *Insurance Co. of North America v. Pasakarnis,* 451 *So.*2d 447 (1984), have adopted an approach that differs slightly from the approach taken by the Wisconsin courts. Those courts hold that nonuse

of an available seat belt may constitute a breach of plaintiff's duty to mitigate damages where there is adequate proof that use of the seat belt would have prevented some of the injuries. Under this scheme, each

> [d]efendant has the burden of pleading and proving that the plaintiff did not use an available and operational seat belt, that the plaintiff's failure to use the seat belt was unreasonable under the circumstances, and that there was a causal relationship between the injuries sustained by the plaintiff and plaintiff's failure to buckle up. If there is competent evidence to prove that the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the jury should be permitted to consider this factor, along with all other facts in evidence, in deciding whether the damages for which defendant may otherwise be liable should be reduced. Nonuse of an available seat belt, however, should not be considered by the triers of fact in resolving the issue of liability unless it has been alleged and proved that such nonuse was a proximate cause of the accident.
>
> [*Insurance Co. of North Am. v. Pasakarnis, supra,* 451 *So.*2d at 454.]

Other courts have rejected the admissibility of seat belt evidence on any theory of civil litigation. Those courts usually rely on one of the following reasons for their position: a plaintiff need not anticipate the negligence or culpability of others, even if it is foreseeable, *see Britton v. Doehring,* 242 *So.*2d 666, 675 (1970); *Amend v. Bell,* 89 *Wash.*2d 124, 132–33, 570 *P.*2d 138, 143 (1977); a tortfeasor should not be able to rely on plaintiff's failure to utilize a voluntary protective device to prevent damage set in motion by the tortfeasor's own negligence, *see Nash v. Kamrath,* 21 *Ariz.App.* 530, 532, 521 *P.*2d 161, 163 (1974); *Lipscomb v. Diamiani,* 226 *A.*2d 914, 918 (Del.Super.Ct.1967); a tortfeasor must accept the plaintiff as he finds him, *see Fischer v. Moore,* 183 *Colo.* 392, 394–95, 517 *P.*2d 458, 459 (1977); seat belt effectiveness is too speculative, *see Britton v. Doehring,* 286 *Ala.* 498, 242 *So.*2d 666, 675 (1970); *D.W. Boutwell Butane Co. v. Smith,* 244 *So.*2d 11, 12 (Miss. 1971); *Miller v. Miller,* 273 *N.C.* 228, 233, 160 *S.E.*2d 65, 69 (1968); high percentage of automobile occupants do not use seat belts, *see McCord v. Green,* 362 *A.*2d 720, 724–25 (D.C. App.1976); *Kopischke v. First Continental Corp.,* 187 *Mont.* 471, 610 *P.*2d 668, 682 (1980); and lastly, imposition of a duty to

wear seat belts is more appropriately a question for the legislature, *see Petersen v. Klos,* 426 *F.*2d 199, amended on other grounds, 433 *F.*2d 911 (5th Cir.1970); *Britton v. Doehring, supra,* 242 *So.*2d 666; *Fischer v. Moore, supra,* 183 *Colo.* 392, 517 *P.*2d 458. No New Jersey reported case has rejected the concept of the admissibility of seat belt evidence in an appropriate civil personal injury case.

Some states' legislatures also have rejected the admissibility of seat belt evidence. *See* 7 *American Law of Products Liability* 3d ¶ 95:11, at 21 (1988). Other states, including Wisconsin, have passed statutes permitting the admission of seat belt evidence, but substantially limiting the percentage of fault that a jury can attribute to the nonuse of a seat belt. *La.Rev.Stat.Ann.* § 32:295.1 (West Supp.1985) (damages may not be reduced by more than two percent for the nonuse of a seat belt); *Mich.Comp.Laws* § 257.710e (West Supp.1986) (seat belt negligence shall not reduce the recovery by more than five percent); *Mo.Ann.Stat.* § 307.178(3) (Vernon Supp.1986) (imposes a one-percent ceiling on the amount of damages that can be reduced for plaintiff's failure to mitigate); *Neb.Rev.Stat.* § 39–6, 103.08 (Supp.1985) (places a five-percent ceiling on reducing award) (Nebraska's seat-belt law was repealed in its entirety by the electorate on November 4, 1987; 1987 *Wis. Laws* 132, to be codified at *Wis.Stat.* § 347.48 (2m)(g)) (limit of fifteen percent reduction on jury verdict due to seat belt defense).

## IV

The New Jersey Legislature, on the other hand, has left the status of the seat belt defense in civil litigation to the courts. On November 8, 1984, Governor Kean signed the Passenger Automobile Seat Belt Usage Act making the wearing of seat belts in passenger cars mandatory in New Jersey. *L.* 1984, *c.* 179 (codified at *N.J.S.A.* 39:3–76.2e to –.2k). New Jersey was the second state in the nation, following only New York, to pass

a mandatory seat belt law. *See N.Y. Veh. & Traf. Law* § 1229–c (McKinney 1986). In the last four years, twenty-five other states and the District of Columbia decided to follow the lead of New York and New Jersey and adopt state mandatory seat belt laws of some sort.[4]

The New Jersey seat-belt statute requires the driver and front seat passengers in an automobile to wear seat belts while the vehicle is in operation. *N.J.S.A.* 39:3–76.2f. The Act exempts operators and passengers in a car manufactured prior to July 1, 1966, the date after which federal law required all automobiles sold in the United States to be equipped with seat belts. *N.J.S.A.* 39:3–76.2g. Violation of the statute carries a twenty-dollar fine, but no motor vehicle points are assessed. *N.J.S.A.* 39:3–76.2j. Moreover, failure to wear a seat belt is a collateral offense only, meaning that a citation will be issued only if the driver is "detained for suspected violation of Title 39 of the Revised Statutes or some other offense." *N.J.S.A.* 39:3–76.2i.

---

4*See Cal. Veh. Code* § 27315 (West Supp.1987); *Conn.Gen.Stat.Ann.* § 14–100a (West Supp.1987); *D.C. Code Ann.* § 40–1602 (1986); *Fla.Stat.Ann.* § 316.614 (West Supp.1987); *Haw.Rev.Stat.* § 291–11.6 (1985); *Idaho Code* § 49–764 (Supp.1987); *Ill.Ann.Stat.* ch. 95½ para. 12–603.1 (Smith–Hurd Supp. 1987); *Ind. Code Ann.* § 9–8–14–1 (Burns 1987); *Iowa Code Ann.* § 321.445 (West Supp.1987); *Kan.Stat.Ann.* § 8–2503 (1986); *La.Rev.Stat.Ann.* § 32:295.1 (West Supp.1987); 1985 *Mass. Acts* 632 (repealed as of December·4, 1986); *Md.Ann. Transportation Code* § 22–412.3 (Supp.1986); *Mich.Comp. Laws Ann.* § 257.710e(3) (West Supp.1987); *Minn.Stat.Ann.* § 169.686 (West 1986); *Mo. Rev.Stat.* § 307.178 (West Supp. 1987); *Neb.Rev.Stat.* §§ 39–6, 103.04–08 (Supp. 1985) (repealed by the electorate on November 4, 1986); *Nev.Rev.Stat.* § 484.641 (1985) (this statute will become effective only if the State of Nevada obtains the authorization of the federal government to increase its legal speed limit to not less than 70 miles per hour); *N.M.Stat.Ann.* § 66–7–372 (Supp.1986); *N.C.Gen. Stat.* § 20–135.2A (Supp.1985); *Ohio Rev. Code Ann.* § 4513.263(B) (Supp. 1986); *Okla.Stat.Ann.* tit. 47, § 12–417 (West Supp.1987); *Tenn.Code Ann.* § 55–9–603 (Supp.1986); *Tex.Rev.Civ.Stat.Ann.* art. 6701d, § 107c (Vernon Supp.1987); *Utah Code Ann.* § 41–6–182 (Supp.1987); *Wash.Rev. Code Ann.* § 46.61.688 (1987); 1987 *Wis. Laws* 132 (to be codified at *Wis.Stat.* § 347.48 (2m)(g)) (1988).

The statement of the Legislature accompanying the Act articulates several policy rationales for the new law, including:

1. There has been a "dramatic decrease in fatalities and serious injuries in countries and provinces having enacted mandatory seat belt usage law...."

2. "It is estimated that easily one-half of all fatalities and serious injuries can be eliminated by simply requiring people to use equipment already installed in their vehicles...."

3. Mandating such use would "greatly reduce lost work time, insurance cost and health benefit cost to both individuals, private companies, and the State of New Jersey."

4. Lastly, "[w]hile insurance rates in the State of New Jersey are among the highest in the country, the increased use of safety seat belt systems will cause subsequent reductions in accidents, deaths, injuries, and lost work time. This could lead to reduced cost to business and industry, and local and state governments thereby eventually leading to cost containment and other incentives in automotive insurance rates and premiums." Assembly Law, Public Safety and Defense Committee Statement to Assembly, No. 2304, p. 3 (1984).

An early draft of the New Jersey statute, which was rejected, provided that:

\* \* \* \* \* \* \* \*

4. Failure to wear a safety belt system, in violation of this act, shall not be considered evidence of negligence nor limit liability of an insurer nor diminish recovery for damages arising out of the ownership, maintenance, or operation of a passenger automobile. In no event shall failure to wear a safety seat belt system be considered as contributory negligence, nor shall the failure to wear a safety belt system be admissible as evidence in the trial of any other civil action.

As finally enacted, however, the statute merely provides, in pertinent part, that "[t]his act shall not be deemed to change existing laws, rules, or procedures pertaining to a trial of a civil action for damages for personal injuries or death sustained in a motor vehicle accident." N.J.S.A. 39:3–76.2h. The North Carolina and Hawaii legislatures subsequently adopted similar

provisions. *N.C.Gen.Stat.* § 20–135.2A(d) (Supp.1987); *Haw. Rev.Stat.* § 291–11.6(d) (1985).

Although other courts have deferred to their legislatures to resolve this question, *Thomas v. Henson,* 102 *N.M.* 326, 695 *P.*2d 476 (1985); *Miller v. Miller,* 273 *N.C.* 228, 160 *S.E.*2d 65 (1968), our Legislature has left to the judiciary the resolution of the seat-belt issue. Therefore, this Court would have to determine what were the "laws, rules or procedures pertaining to a trial of a civil action for personal injuries or death sustained in a motor vehicle accident" existing when the State enacted *N.J.S.A.* 39:3–76.2h, if the accident occurred thereafter. Here, the question is what was the law in 1980? Nevertheless, in anticipation of future litigation, we decide what the relevant law is today regarding the admissibility of seat belt evidence.

## V

When the accident occurred the law required that automobiles be equipped with seat belts, but there was no law requiring occupants to use the belts. Thus, at the time of plaintiff's accident it was not negligence *per se* to fail to use available seat belt. The Wisconsin courts in *Bentzler* and *Foley* and all other courts that have addressed the issue, in the absence of a mandatory-use law, have also rejected a *per se* rule. *See, e.g., Lowe v. Estate Motors Ltd.,* 428 *Mich.* 439, 449, 410 *N.W.*2d 706, 710 (1987) ("[W]e do not ... presume to decide whether failure to use a seat belt is or is not a deviation from the general and universal duty of an automobile passenger to exercise ordinary care for his own safety. We hold, rather, that because reasonable minds might differ, that question may not be withheld from jury decision."); *Robinson v. Lewis,* 254 *Or.* 52, 55, 457 *P.*2d 483, 484 (1969) (absent legislative mandate, failure to wear seat belt does not constitute negligence *per se* ); *Cierpisz v. Singleton,* 247 *Md.* 215, 227, 230 *A.*2d 629, 635 (1967) ("it is not negligence per se to fail to use a seat belt where the statute requires only its installation in the vehicle").

*But see Hutchins v. Schwartz,* 724 *P.*2d 1194 (Alaska 1986) (court suggests that plaintiff's failure to wear a seat belt in jurisdiction with a mandatory-use law would constitute negligence *per se* ).

We continue, however, to hold even after the enactment of the mandatory seat belt law that failure to use a seat belt is not negligence *per se.* Our reading of the minimum penalties imposed under the statute leads us to conclude that the Legislature did not intend that a person's failure to use a seat belt would constitute negligence *per se.*

Nonetheless, it has long been held in this state that while the violation of a statutory duty of care is not conclusive on the issue of negligence, it is a circumstance which the jury should consider in assessing liability. *Braitman v. Overlook Terrace Corp.,* 68 *N.J.* 368 (1975); *Ellis v. Caprice,* 96 *N.J.Super.* 539 (App.Div.1967); *Csaranko v. Robilt, Inc.,* 93 *N.J.Super.* 428 (App.Div.1967); *Mattero v. Silverman,* 71 *N.J.Super.* 1 (App. Div.1962). Thus, in a negligence case, a plaintiff's failure to wear a seat belt would be admissible as evidence of some negligence although not negligence *per se.*

Despite the majority rule that failure to use a seat belt does not constitute negligence *per se,* the more recent cases overwhelmingly adopt some variation or combination of the comparative-fault theory or the mitigation-of-damages theory to hold that the injured party's recovery should be reduced by the party's own negligence in failing to use a seat belt. See *Caiazzo v. Wolkswagenwerk A.G.,* 647 *F.*2d 241 (2d Cir.1981); *Wilson v. Volkswagen of America, Inc.,* 445 *F.Supp.* 1368 (E.D.Va.1978); *Lowe v. Estate Motors Ltd., supra,* 428 *Mich.* 439, 410 *N.W.*2d 706; *Wemyss v. Coleman,* 729 *S.W.*2d 174 (Ky.1987); *Cannon v. Lardner,* 185 *Ga.App.* 194, 363 *S.E.*2d 574 (1987); *Hutchins v. Schwartz,* 724 *P.*2d 1194 (Alaska 1986); *Insurance Co. of North Am. v. Pasakarnis, supra,* 451 *So.*2d 447; *Foley v. City of West Allis, supra,* 113 *Wis.*2d 475, 335 *N.W.*2d 824; *Spier v. Barker, supra,* 323 *N.E.*2d 164, 363

N.Y.S.2d 916; *Dudanas v. Plate,* 44 *Ill.App.*3d 901, 3 *Ill.Dec.* 486, 358 *N.E.*2d 1171 (Ill.App.Ct.1976); Annotation, "Nonuse of Seat Belt as Failure to Mitigate Damages," 80 *A.L.R.*3d 1033 (1977). Each approach, we believe, has its disadvantages. The doctrines of mitigation of damages and avoidable consequences usually involve post-accident conduct. On the other hand, a straight comparative negligence approach precludes recovery for a plaintiff if a jury finds nonuse of the seat belt to be over fifty percent of the total negligence. Therefore, we reject both these approaches.

██ Instead, we adopt an approach that is consistent with our prior decisional law, our comparative negligence law, and public policy. Our approach builds on *Barry*'s recognition that plaintiff's injuries arose from two separate and distinct collisions. Consequently, the relevant inquiry is not whether the failure to use a seat belt contributed to the cause of the accident but whether the nonuse of a seat belt contributed to plaintiff's injuries. Central to our holding is the belief that juries must understand the distinction between the two events, and that "[w]earing seat belts has relevance only with respect to the 'second collision.'" *Dunn v. Durso, supra,* 219 *N.J.Super.* at 395. We also hold that in order for a jury to consider seat belt nonuse in reducing damages, the failure to wear a seat belt must increase the extent or severity of injury.

Comparative negligence contemplates the inclusion of all relevant factors in arriving at appropriate damages awards. Certainly, nonuse of a seat belt may be a relevant factor in arriving at an appropriate award of damages. *See Hutchins v. Schwartz, supra,* 724 *P.*2d at 1197. In *Bentzler,* the Supreme Court of Wisconsin stated:

[I]n those cases where seat belts are available and there is evidence before the jury indicating causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. A jury in such [a] case could conclude that an occupant of an automobile is negligent in failing to use seat belts.

[*Bentzler v. Braun, supra,* 34 *Wis.*2d at 387, 149 *N.W.*2d at 640.]

The Supreme Court of Michigan has considered the admissibility of evidence concerning seat belt nonuse in an automobile strict liability suit. Michigan, like Wisconsin and New Jersey, is a comparative negligence state. In *Lowe v. Estate Motors Ltd., supra,* 428 *Mich.* 439, 410 *N.W.*2d 706, the injured plaintiff sued the manufacturer of her car, the distributor from which she purchased the car, and the manufacturer of the floor mats, alleging negligent design and breach of implied warranties. Defendants posited as a defense that the plaintiff was not wearing her seat belt at the time she lost control of her car. Further, defendant asserted that plaintiff's failure to use her seat belt constituted a breach of her duty to exercise reasonable care for her own safety and thereby precluded recovery. The court rejected this claim and reasoned:

> The admissibility of evidence concerning a plaintiff's failure to use a seat belt for the purpose of attempting to establish the partial defense of comparative negligence does not concern the question of duty. The common-law duty issue is limited to whether the plaintiff was under any obligation to exercise reasonable care for her own safety. It cannot be seriously contended that automobile passengers are under no obligation whatsoever to exercise due care for their own safety because accidents are unforeseeable. The speciousness of such a contention is particularly reflected in the present case in which one of plaintiff's theories of liability is indeed premised upon the foreseeability of automobile accidents. Whether failure to use a seat belt under the circumstances of the instant case constitutes a deviation from that legal duty, [or] rather, as discussed above, concerns the specific standard of care, which, consistent with our prior decisions, may not be withheld from the jury unless all reasonable minds could not differ, or some ascertainable public policy consideration requires protecting, and therefore encouraging, that conduct under any circumstances.
>
> [428 *Mich.* at 460, 410 *N.W.*2d at 715.]

Thus, Michigan allows the evidence of seat belt nonuse to go directly to the jury as evidence of comparative fault. As a theoretical matter, the Michigan ruling on the admissibility of seat-belt evidence has the potential for undue speculation by juries in many cases. This theoretical possibility is largely eliminated by the Michigan seat-belt statute, which expressly stipulates that failure to use a seat belt may diminish the injured party's recovery only by five percent. *Mich.Comp. Laws* § 257.710e (1987).

We agree with the Michigan Supreme Court in *Lowe* that the existence of a duty to use a seat belt is not dispositive. To posit a general duty to use a seat belt, it seems to us, unduly complicates the issue and could potentially deprive an injured party from a legitimate recovery against an arguably more culpable negligent driver or automobile manufacturer who causes the *accident* to happen in the first place. We do not believe that negligent drivers or the manufacturers or sellers of defective automobiles should be able to escape liability in every case merely because the party injured as a result of their negligence or defective product was not using a seat belt. Tortfeasors, after all, take their victims as they find them. *See Fischer v. Moore*, 183 *Colo.* 392, 517 *P.*2d 458, 459 (1973); W. Prosser, *Law of Torts* ¶ 50, at 299 (3d ed. 1964).

█ We are convinced that the factfinder should determine whether an injured party's nonuse of a seat belt should serve to reduce that party's recovery and not simply whether the party's conduct has met an established general standard of care. The jury also should be free to take into account the prevailing custom of seat belt use at the time of an accident. For example, there was testimony at the trial of this case that indicated that only twelve to fifteen percent of the population used seat belts in 1980, when this accident occurred. Such evidence is relevant to the jury's determination of whether an injured party acted as a reasonably prudent person in not wearing a seat belt. We are persuaded that allowing the jury to determine whether the evidence establishes that failure to use an available seat belt contributed to producing plaintiff's damages best comports with principles of fairness and is consistent with the principles of comparative negligence followed in this state.

## VI

The New Jersey Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.3, which became effective in August 1973, provides in pertinent part:

Contributory negligence shall not bar recovery in an action by any person ... to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought. Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering. [*N.J.S.A.* 2A:15–5.1.]

By adopting the Comparative Negligence Act, the Legislature intended to ameliorate the harshness of the common-law contributory negligence doctrine. Accordingly, when Governor Cahill signed the legislation, he remarked that "[n]o longer will a seriously [injured] person be prevented from obtaining compensation for his injuries merely because he was partially responsible, in a minor way, for the accident in which he was injured." *Release from Office of the Governor*, May 24, 1973. Comparative negligence, thus, grew out of an "equitable desire to mitigate the unfairness associated with the total bar to recovery posed by common law contributory negligence." *Suter v. San Angelo Foundry & Mach. Co., supra*, 81 *N.J.* at 161. Also underlying the law of comparative negligence is the notion that every person has an obligation to exercise reasonable care for his or her own safety. It is only fair that each person only pay for injuries he or she proximately caused.

We have also observed the public policy of New Jersey that "a manufacturer has a duty to make sure that its manufactured products placed into the stream of commerce are suitably safe when properly used for their intended or reasonably foreseeable purposes." *Brown v. United States Stove Co.*, 98 *N.J.* 155, 165 (1984); *Soler v. Castmaster, Div. of H.P.M. Corp.*, 98 *N.J.* 137, 144–45 (1984). The underlying principle of strict liability is that if at the time a manufacturer or seller distributes a product, it is not reasonably fit, suitable, and safe for its intended or foreseeable use and a person is injured as a result, the manufacturer or seller will be liable for the ensuing damages. The essence of an action in strict liability is that the injured party is relieved of the burden of proving the manufacturer's negligence. The injured party need prove, for the

party's prima facie case, only that the injury-causing product was unsafe or unfit for its intended or foreseeable use at the time it left the manufacturer's control and that the injuries sustained arose from the unsafe or unfit condition of the product. In the appeal of this case, the parties and the Court assume plaintiff has satisfied this burden. Consequently, there is no dispute on this appeal that the defective axle in fact caused the first collision.

We have held that the Legislature intended the Comparative Negligence Act to apply in strict liability situations, *i.e.*, in products liability cases. *Suter v. San Angelo Foundry & Machine Co., supra*, 81 *N.J.* at 174. Today, we hold that modified principles of comparative fault should apply to reduce a plaintiff's recovery for seat-belt damages. In automobile strict liability cases, we hold that an injured party's failure to use a seat belt does not constitute contributory negligence that bars recovery by the injured party against the manufacturer for defective design or defective manufacture. Although non-use of a seat belt cannot bar recovery when seat belt nonuse does not contribute to the accident,[5] it may reduce recovery for second collision injuries or what we have called "seat-belt damages." These latter, second-collision injuries are those injuries that the occupant of the automobile could have avoided through use of a seat belt.

Thus, we conclude that nonuse of a seat belt does not constitute contributory negligence sufficient to bar a recovery in strict liability. Nevertheless, considerations of public policy, as expressed in our state's mandatory seat belt law, and fair-

---

[5]We recognize that there might be instances where nonuse of a seat belt does somehow contribute to the automobile accident, or "first collision" itself. There is no contention in this case that plaintiff's failure to wear a seat belt was a proximate cause of this accident. Thus, we do not address the seat-belt defense in a case where the failure to wear a seat belt is an alleged cause of the accident. *Accord Insurance Co. of North Am. v. Pasakarnis, supra*, 451 *So.*2d at 454 nn. 3 & 4; *Spier v. Barker, supra*, 35 *N.Y.*2d at 451 n. 3, 323 *N.E.*2d at 168 n. 3, 363 *N.Y.S.*2d at 921 n. 3.

ness lead us to reject the notion that seat belt nonuse should not reduce a plaintiff's recovery in cases where defendant can demonstrate that nonuse of a seat belt increased the extent or severity of plaintiff's injury. In *Brown v. United States Stove Co.*, we wrote that "[p]rinciples of public policy, the foundation that undergirds legal responsibility, are appropriate considerations in the strict liability context." 98 *N.J.* at 173. We observed that

> [t]hese principles are especially germane when the asserted misconduct of persons other than the manufacturer bears upon the imposition of ultimate responsibility for eventual accidental harm. Public policy and fairness concerns consequently must influence a court's analysis of the relevant evidence bearing upon causation.
>
> [*Ibid.*]

*See also Michalko v. Cooke Color & Chem. Corp.*, 91 *N.J.* 386, 398 (1982) ("A court's ruling on whether to impose a legal duty implicates policy considerations relating to the allocation of costs due to accidents."); *Caputzal v. The Lindsay Co.*, 48 *N.J.* 69, 77–78 (1966) (proximate cause is "fundamentally ... an instrument of fairness and policy"). "The assessment," we wrote in *Brown*, "as to whether conduct can be considered sufficiently causally connected to accidental harm so as to justify the imposition of liability also implicates concerns for overall fairness and sound public policy." 98 *N.J.* at 173.

We recognize that the effectiveness of seat belts in reducing death and injury from automobile accidents cannot reasonably be disputed at this point. In fact, this Court is willing to take judicial notice of the efficacy of seat belts. Other courts have done likewise. *See Dunn v. Durso, supra*, 219 *N.J.Super.* at 394 & n. 9; *Spier v. Barker, supra*, 323 *N.E.*2d at 168–69, 363 *N.Y.S.*2d at 921–22; *Insurance Co. of North Am. v. Pasakarnis, supra*, 451 *So.*2d at 453; *Woods v. City of Columbus*, 23 *Ohio App.*3d 163, 166, 492 *N.E.*2d 466, 470 (1985); *Twohig v. Briner*, 168 *Cal.App.*3d 1102, 1104–10, 214 *Cal.Rptr.* 729, 730–34 (1985); *McKee v. Southeast Delco School Dist.*, 354 *Pa.Super.* 433, 435–37, 512 *A.*2d 28, 29 (1986). As the court in *Dunn* recognized, "[p]roperly worn, seat belts may be the most

significant source of automobile crash protection for automobile occupants." *Dunn v. Durso, supra,* 219 *N.J.Super.* at 394 n. 8; *accord* Bowman, "Practical Defense Problems—The Trial Lawyer's View," 53 *Marq.L.Rev.* 191, 198 (1970); *United States Dep't of Transp., Nat'l Highway Safety Admin. Technical Report, Effectiveness and Efficiency of Safety Belt and Child Restraint Usage* (1982); *United States Dep't of Transp., Nat'l Highway Safety Comm'n, The Automobile Safety Belt Fact Book (May 1982 rev.).* As the Court of Appeals of New York has observed, " '[t]he seat belt, properly installed *and properly worn,* still offers the single best protection available to the automotive occupant exposed to an impact.' " *Spier v. Barker, supra,* 35 *N.Y.*2d at 452, 323 *N.E.*2d at 168, 363 *N.Y.S.*2d at 922.

Public policy and simple fairness dictate that we allow defendants to present the issue of seat belt use to juries where defendant introduces satisfactory evidence that plaintiff's failure to use a seat belt increased the extent or severity of plaintiff's injuries. Thus, while we conclude that seat belt nonuse is not a bar to a strict liability recovery, we also conclude that juries may reduce an injured party's recovery on the basis of such evidence under certain circumstances. It remains, therefore, for us to devise a system whereby trial courts may submit this evidence to the jury in a format that is compatible with the principles of comparative fault and with our desire to hold liable those manufacturers who introduce defective products into the stream of commerce.

## VIII

On the basis of the court's instructions, the jury determined that plaintiff was forty percent negligent for her failure to wear a seat belt. This percentage was a percentage of the total negligence involved in the accident, or one-hundred percent. The court reduced the total damages awarded by forty percent to reflect the jury's finding. The jury did not expressly

distinguish, because it was not asked to, between any injuries that were avoidable by use of the seat belt and any that were not. The Law Division in *Dunn v. Durso, supra,* 219 *N.J.Super.* 383, followed the same approach, relying on the Wisconsin model announced in *Foley v. City of West Allis, supra,* 113 *Wis.*2d 475, 335 *N.W.*2d 824.

As previously discussed, we do not believe that the court should reduce the full amount of damages caused by injury in an automobile accident by an arbitrary percentage determined by the jury to reflect a plaintiff's failure to wear a seat belt. Indisputably, in a case such as this one, plaintiff's failure to wear her seat belt had absolutely nothing to do with the accident. In every case, the culpable driver or manufacturer is a party who proximately caused the accident. A party responsible for the accident is always also responsible for the injuries incurred as a result of the accident. Moreover, as far as automobile manufacturers are concerned, it is surely foreseeable that not all passengers in the automobiles they manufacture (or in the automobiles with which the automobiles they manufacture collide) will wear seat belts. If total damages for all injuries were indiscriminately reduced to reflect nonuse of seat belts, the manufacturers of defective automobiles might potentially receive an undeserved windfall in cases where they rightfully should be liable for having introduced an unsafe product into the stream of commerce. At the same time, however, defendants should not be fully liable for injuries plaintiffs could have avoided by use of a seat belt. *See Dunn v. Durso, supra,* 219 *N.J.Super.* at 386–87.

Therefore, we adopt an equation for evaluating seat belt evidence that takes into consideration these competing interests. First, the jury would find the total amount of damages incurred as a result of the accident. The jury would make this determination without considering the issue of plaintiff's failure to wear a seat belt. Second, the jury would determine each party's comparative negligence in causing the accident. *N.J.S.A.* 2A:15–5.2(b). At this point, the court, pursuant to the

Comparative Negligence Act, would eliminate those defendants from whom plaintiff could not recover.

Next, the jury would determine whether plaintiff was negligent for failure to wear a seat belt. Here, the jury must determine whether nonuse of the seat belt was negligence, independent of any possible negligence contributing to the accident. The standard here is the standard of the reasonably prudent person. Thus, in any given case, the jury may, but need not, find that a reasonable person would have worn a seat belt and whether failure to do so constituted negligence. If this step results in a finding of negligence, then the jury would determine whether the negligent failure to wear a seat belt increased the nature and severity of plaintiff's injury.

The negligent failure to wear a seat belt is material only where the extent of plaintiff's injuries is increased as a direct result of that negligent conduct. For example, if a plaintiff is severely injured in an accident and the evidence reveals that plaintiff's severe injuries could not have been avoided by use of a seat belt, it is immaterial that some very minor injury could have been avoided by seat belt use. Therefore, if the negligent failure to wear a seat belt has no impact on the extent of injury, the jury should cease to consider the seat belt issue and simply return its verdict as if there had been no seat belt issue. If, on the other hand, the jury finds that the negligent failure to wear a seat belt increased the extent or severity of plaintiff's injuries, the jury must isolate the second-collision or seat-belt damages and determine the value of those damages. To do so, the jury would calculate the amount of damages plaintiff would have incurred had plaintiff worn a seat belt and subtract that amount from the total damages actually incurred. The difference represents the seat-belt damages.

After the jury has completed these two steps and found (1) that the failure to use a seat belt constituted negligence and (2) that plaintiff sustained avoidable, second-collision injuries, the jury must then determine the percentage of plaintiff's compara-

tive fault for damages arising from those injuries. The *total* negligence for these second-collision or seat-belt damages consists of (a) defendant's negligence in causing the accident (since without that negligence there would have been no accident and no injuries of any kind), (b) plaintiff's comparative negligence, if any, in causing the accident (since, again, without plaintiff's comparative negligence there would have been no accident and no injuries), and (c) plaintiff's negligence in failing to use a seat belt (since without that negligence there would not have been any second collision injuries). The total fault for these seat-belt damages, as for all damages, is one-hundred percent. Thus, the jury must determine the percentage of plaintiff's fault for these damages that are attributable to plaintiff's failure to wear a seat belt. If the jury previously found a percentage division of fault between plaintiff and defendant in causing the accident, the jury must be told that the court, when finally molding the jury findings into the verdict, will continue that proportion of fault when adding in the percentage attributable to plaintiff's failure to wear a seat belt.

For example, if a jury found plaintiff twenty percent liable for an accident and defendant eighty percent liable for the accident, and, further, that plaintiff was twenty percent liable for plaintiff's seat-belt damages due to his failure to use a seat belt, the court would mold these three findings of fault in determining plaintiff's recovery for those damages. The three percentages of fault add up to 120%. The court would add the two findings of plaintiff's negligence (twenty percent for causing the accident, twenty percent for failure to use a seat belt), which total forty percent. The sum of forty percent would become the numerator of a fraction in which the denominator would be 120, or the total of all three findings of negligence (defendant's eighty percent fault for causing the accident, plaintiff's twenty percent fault for causing the accident, and plaintiff's twenty percent fault for not wearing a seat belt). This fraction results in a finding of 33⅓%, which reflects the amount by which the court would reduce plaintiff's recovery for seat-

belt damages due to the negligent failure to use a seat belt. Assuming seat-belt damages of $300,000, the court would reduce plaintiff's recovery for those injuries by $100,000. This calculation serves two purposes. First, the calculation insures that the relative fault of the plaintiff and defendant in causing the accident divides *all* damages that flow from the accident proportionately. Thus, the calculation guarantees that fault in causing the accident affects a plaintiff's recovery in the manner prescribed by the comparative negligence law. The second purpose of this calculation is to insure that the seat belt damages, and *only* those damages, are further reduced by plaintiff's fault in not wearing a seat belt.

In sum, the jury and the court would apply the following equation:

(1) The jury determines total damages as if there were no seat belt issue at all.

(2) The jury determines the comparative fault of each party in causing the accident and expresses those determinations in terms of a percentage (*e.g.*, General Motors for the defective axle and plaintiff for any applicable negligence on her part, such as if it could be shown that she knew of the defective axle and drove anyway or that she drove inattentively and at an excessive rate of speed).

(3) The jury determines whether plaintiff's nonuse of a seat belt increased the extent or severity of plaintiff's injuries and whether plaintiff's nonuse of a seat belt constituted negligence.

(4) The jury determines plaintiff's second-collision injuries, or seat-belt damages.

(5) The jury determines the percentage of plaintiff's comparative fault for the second-collision injuries or seat-belt damages. The court should inform the jury that plaintiff's fault for failure to wear a seat belt will be added to plaintiff's fault, if any, in causing the accident to reduce further plaintiff's award in an amount proportionate also to defendant's relative fault in causing the accident.

(6) The court determines plaintiff's recovery by molding the jury's damages and negligence findings.

In applying step 5 we would not eliminate a defendant from liability for seat-belt damages, even if plaintiff was more than fifty percent at fault for causing the second-collision injuries, after the calculation made in step 5. Thus, for example, if a jury found plaintiff sixty percent negligent for not wearing a seat belt and found that there existed second-collision injuries, defendant would be liable for the remaining forty percent of

the damages arising from those injuries, assuming defendant was one-hundred percent at fault for the accident. This formula essentially is the formula adopted by the court in *Dunn v. Durso*, except that we reject the notion that a plaintiff's *total* damages should be reduced if a jury concludes the plaintiff was negligent for failure to wear a seat belt.

We believe that this formula will properly isolate the damages *and fault* attributable to a plaintiff's failure to wear a seat belt. Additionally, it continues the distinction that the New Jersey courts have recognized since *Barry v. Coca Cola Co., supra,* 99 *N.J.Super.* 270, between negligence contributing to the accident and negligence contributing to the injury. The formula has the added advantage of avoiding the possible unfairness of the unmodified application of the comparative negligence statute, which would deny recovery to an injured plaintiff if the jury found that nonuse of a seat belt constituted over fifty percent of the total injury-causing negligence. We are convinced it is the most reliable way to avoid the undesirable result of a culpable defendant escaping liability for negligently causing an accident or for manufacturing and distributing an unsafe product merely because the injured occupant may have been guilty of not buckling-up. We believe that an instruction asking for an apportionment of the second-collision injuries based on fault enables the jury to weigh fairly the relative culpability of the parties. We acknowledge that this formula may appear complicated in its rough outline. It is, however, an equation familiar to tort law. Essentially, the expansion of the jury's role in such cases requires that the jury make two additional determinations only: first, the amount of plaintiff's damages that would have been avoided if the seat belt had been worn; and second, the proportionate fault attributable to plaintiff's failure to wear the seat belt in relation to all other fault that caused the accident. We are confident that juries can follow this formula.

The adoption of this formula requires a remand in the present case for a new determination of damages. The court's instruc-

tions and jury interrogatories permitted the jury to reduce plaintiff's total damages for her failure to wear a seat belt. Because today's ruling necessitates a division of damages into those damages avoidable by use of a seat belt and those not avoidable by use of a seat belt, we remand the case for a new proceeding at which the jury will determine plaintiff's damages pursuant to the formula announced today. Since we are remanding the case to the trial court for a new trial on damages, plaintiff's claim of inadequate damages raised in her cross-petition for certification need not be addressed.

Reversed and remanded.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.